**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Kenneth N. Thompson, Sr and KRT (minor)<br><br>Plaintiff<br><br>VS<br><br>The Village of Monee an Illinois Municipal Corporation, etl<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE SUPPLIMENTAL CLAIMS<br><br>Case No. 23-cv-13982<br><br>Jury Trial Demanded<br><br>Judge: Sara L Ellis<br><br>Magistrate Judge Heather K. McShain |

# PLAINTIFFS SECOND AMENDED COMPLAINT

Submitted By,

Keenan Thompson # 72458
Thompson Law Group P.C.
1440 W Taylor St PMB 4046
Chicago, IL 60607
PH: 312-741-8722
ktthompson@thompsongroup.legal

December 8, 2025

## TABLE OF CONTENTS

**INTRODUCTION**........................................................ 1-4

Plaintiffs, Defendants, Jurisdiction ........................................ 4-6

Statement of Facts ........................................................ 7-88

**COUNTS**................................................................ 89-146

Count I: 42 USC § 1983 Equal Protection ................................... 89-99

Count II: 42 USC § 1983 First Amendment Retaliation ........................ 99-103

Count III: 42 USC § 1983 Municipal Policy Monell ........................... 103-115

Count IV: 42 USC § 1983 Conspiracy (Fed & State) ........................... 116-120

Count V: 42 USC § 1983 1985 (3) (<u>Conspiracy</u> (neighbors) ............. 120-128

Count VI: 42 USC § 1983 Fourth Amendment ................................... 128-133

Count VII: 42 USC § 1983 Procedure Due Process Claim ....................... 133-137

Count VIII: 42 USC § 1983 Intentional Infliction of Emotional Distress ..... 138-143

Count IX: 42 USC § 1983 Indemnification .................................... 143-145

## TABLE OF AUTHORITIES

### Cases

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) ........................................................ 122

*Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). ............................................................... 106

*Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997) ............................................... 110

Brokaw v. Mercer Cnty., 235 F.3d 1000, 1014–17 (7th Cir. 2000) .................................... passim

*Carlson v. Bukovic*, 621 F.3d 610, 617–18 (7th Cir. 2010) ...................................................... 136

*Carver v. Sheriff of LaSalle Cnty.*, 324 F.3d 947, 948 (7th Cir. 2003) ...................................... 150

Cooney v. Rossiter, 583 F.3d 967, 971–72 (7th Cir. 2009) ........................................................ 122

*County of Sacramento v. Lewis*, 523 U.S. 833, 845–47 (1998) ................................................. 140

*Cozzi v. Vill. of Melrose Park*, 592 F. Supp. 3d 701, 707–08 (N.D. Ill. 2022) ......................... 110

*Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill. 1994) .............................................................. 145

*Doe v. Heck*, 327 F.3d 492, 509–10 (7th Cir. 2003) ................................................. 135, 136, 140

*Esmail v. Macrane,* 53 F.3d 176, 178-80 (7th Circ. 1995) .......................................................... 95

*Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995) ............................................................... 107

*Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) ................... 110

*Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83–84 (Ill. 2003) ......................................................... 145

*Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014) ........................................................... 140

*Flores v. City of S. Bend*, 997 F.3d 725, 733 (7th Cir. 2021) ................................................... 110

*Fries v. Helsper,* 146 F.3d 452, 457 (7th Cir. 1998). ................................................................ 122

*Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). .................................................. 110

*Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) .................................................. 110

*Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). .............................................................. 127

*Hernandez v. Foster*, 657 F.3d 463, 473–75 (7th Cir. 2011). ........................................... 135, 136

*Honaker v. Smith*, 256 F.3d 477, 490–91 (7th Cir. 2001 ........................................................... 145

Illinois v. Gates, 462 U.S. 213, 238 (1983) ................................................................................ 139

*LaPorta v. City of Chicago*, 988 F.3d 978, 986–87 (7th Cir. 2021) .......................................... 110

*Mann v. Vogel*, 707 F.3d 872, 877–78 (7th Cir. 2013) ........................................................... 140

*Massey v. Johnson,* 457 F.3d 711,716 (7th Cir. 2006) ............................................................ 106

McGrath v. Fahey, 533 N.E.2d 806, 809 (Ill. 1988) ................................................................ 144

*McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017) ......................................... 106

*Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008) ................................ 140

*Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978) ......................................................... 110

*Parker v. Side By Side*, *Inc.,* 50 F. Supp. 3d 988, 1023 (N.D. Ill. 2014) .................................. 145

*Public Finance Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976) .............................................. 144

*Sawnson v. City of Chetek*, 718 F.3d 780, 784. (7th Cir. 2013) .................................................... 96

*Schor v. City of Chicago*, 576 F.3d 775, 779 (7th Cir. 2009) .................................................... 110

*Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) .......................................................... 110

*Troxel v. Granville*, 530 U.S. 57, 65 (2000) ............................................................................ 141

*Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000) ........................................................... 135

*Whitlock v. Brueggemann*, 682 F.3d 567, 579–80 (7th Cir. 2012) ............................................ 140

*Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997) .................................................. 150

*Yang v. City of Chicago*, 137 F.3d 522, 526 (7th Cir. 1998) ..................................................... 150

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Kenneth Thompson, Sr, KRT (Minor)<br><br>Plaintiff<br><br>VS<br><br>The Village of Monee an Illinois Municipal Corporation, Mayor Therese Bogs, Wayne Haser, Ruben Bautista, Romulus Biris, Michael Kos Roxanne Williams, Erwin Boggs, Roberta Boggs, David Lynch, Judith Lynch, Chief Scott Koerner, Evie Lazzaroni # 715, William Little #728, Anthony Lazzaroni<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE SUPPLIMENTAL CLAIM<br><br>Case No. 23-cv-13982<br><br>Jury Trial Demanded<br><br>JUDGE: SARA L. ELLIS<br><br>MAGISTRATE JUDGE: Heather K. McShain |

**PLAINTIFFS SECOND AMENDED COMPLAINT**

Plaintiffs Kenneth Thompson, SR and KRT (collectively Plaintiffs) by and through their Counsel, Attorney, Keenan Thompson of Thompson Law Group, brings this complaint against defendants, The Village of Monee an Illinois Municipal Corporation (VOM), Mayor Therese M. Bogs, Wayne Hasser, Ruben Bautista, Romulus Biris, Michael Kos, Roxanne Williams, Chief Scott Koerner, Anthony Lazzaroni, Evie Lazzaroni # 715, Jamal Martin #707, William Little #728, Erwin Boggs, Roberta Boggs, David Lynch, and Judith Lynch. Plaintiff alleges upon personal knowledge regarding each of them and their own acts, and on belief, regarding all other matters:

## INTRODUCTION

The Village of Monee's illegitimate animus toward the plaintiff over the past twenty years has demanded that the Plaintiff present his story in a 145-page, second-amended complaint with 101 supporting exhibits. This case arises from a coordinated, long-term, racially motivated campaign carried out by the Village of Monee ("VOM"), the Monee Police Department ("MPD"), Mayor Therese Bog, Wayne Hasser, Erwin Bogs, and other conspirators who share overlapping political, familial, and employment ties within the Village. For over twenty years, these defendants, acting both individually and collectively, used municipal authority as a weapon to harass, intimidate, surveil, and selectively punish the Plaintiff, an African American homeowner and long-time community member, to force him and his family to leave the Village of Monee. Plaintiff Kenneth Thompson, Sr., an African American business owner for 35 years, has lived at [1]6644 W. Maple Court for over twenty years. As one of the few African American families in the Village of Monee, the Plaintiff and his family have faced unequal treatment, hostility, and targeted enforcement measures not applied to similarly situated residents.

The conspiracy stems from the concentration of influence and authority within the Bogs family, which includes Mayor Therese Bogs, her husband and former Village Clerk Wayne Hasser, and her parents, Erwin and Roberta Bogs. Erwin Bogs, a long-time member and former

---

[1] it is significant to note that Plaintiffs home is located in the LAST cul-de-sac in Gorman Farm Estates out of six Cul-de-sacs where every Estate sits on 2.5 acers of land if not more and 5.3 miles from Village of Monee Village Hall.

chairperson of the Village of Monee Planning and Zoning Committee. Erwin and Roberta Bogs live directly across the street from the Plaintiff. As part of this scheme, Erwin Bogs and Wayne Hasser routinely submitted false, exaggerated, or fabricated complaints to MPD and Village Code Enforcement regarding the Plaintiff's property, guests, vehicles, and daily activities. These false complaints resulted in an unprecedented increase in police and code enforcement citations, warnings, and surveillance specifically targeting the Plaintiff's residence.

MPD officers and Village Code Enforcement officials acted under the direction of, and in coordination with, Mayor Therese Bogs, Chief Scott Koerner, Wayne Hasser, Erwin Bogs, and the Village's leadership. Officers responded "daily, if not multiple times per day," often arriving at the plaintiff's residence immediately after visiting the [2]mayor's home. When the plaintiff left his home, officers would follow him and say, "Mr. Thompson, we are getting 'anonymous complaints' about you," despite knowing these complaints came from the same politically connected family seeking his removal from the neighborhood.

Together, the facts will show far more than isolated incidents toward Mr. Thompson. They reveal a multi-layered, purposeful, and racially motivated conspiracy executed through the machinery of municipal government authority. The defendants' extreme and outrageous conduct was wholly arbitrary when they issued three ordinance fines consecutively on the Plaintiffs' property in one day, totaling $5985.00, without any notice. What will shock the conscience of any U.S. citizen is the Monee Police Department's illegal seizure of the Plaintiff's minor child

[2] Plaintiff often observed the Mayor Theresa and her Husband talking to the Monee Police at their front door.

without a court order, no DCFS investigation, and no allegations from anyone of abuse, neglect, or harm to the minor child. The defendants' invidious discrimination continued throughout the entire course of this litigation, even into 2025, as proven when a defendant's employee testified that she drove past fifteen houses twice on March 5, 2025, in the Plaintiff's subdivision but did not notice that the fifteen residences all had multiple garbage cans visible in violation of the Village ordinance. Defendants' actions individually and collectively constitute violations of Plaintiff's constitutional rights under the Equal Protection Clause, actionable conspiracy under 42 U.S.C. §§ 1983 and 1985(3), and intentional infliction of emotional distress under Illinois law.

## FEDERAL COUNTS

**Count I**: 42 USC § 1983 Equal Protection Claim

**Count II:** 42 USC § 1983 First Amendment Retaliation Claim.

**Count III:** 42 U.S.C § 1983 Municipal Policy Monell Claim

**Count IV:** 42 USC § 1983 Conspiracy Claim (Federal and State)

**Count V:** 42 USC § 1985 (3) Conspiracy Claim

**Count VI**: 42 USC § 1983 Fourth Amendment

**Count VII**: 42 USC § 1983 Procedural Due Process Claim

## STATE COUNTS

Count **VIII:** Intentional Infliction of Emotional Distress Claim (IIED)

**Count VIII:** Indemnification.

## JURISDICTION and VENUE

1) This action is brought pursuant to 42 U.S.C § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

2)This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and venue is proper under U.S.C § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the Village of Monee, Illinois.

3)The Court has supplemental jurisdiction over the state law administrative review count.

## PLAINTIFFS

4) At all times relevant and herein mentioned, Plaintiff, Kenneth Thompson, Sr ("THOMPSON" or "PLAINTIFF"). THOMPSON is a United States citizen and resides in the Northern District of Illinois.

5) At all times relevant and herein mentioned, Plaintiff, KRT, a minor ("PLAINTIFF"), is a United States citizen and resides in the Northern District of Illinois.

## DEFENDANTS

6) Defendant Village of Monee **"VOM"** is a municipality incorporated under the State of Illinois laws. It funds the Department of Police, the Department of Code Enforcement, and the municipal court system of the Village, the Department of Administrative Hearings.

## INDIVIDUAL DEFENDANTS

7) "VOM" Employees: Defendants, Ruben Bautista, Romulus Biris, Michael Kos, Roxanne Williams, are employees for defendant **"VOM".**

8) VOM Mayor: Defendant, Therese Bogs is the mayor and is a final policymaker of the **"VOM".** Defendant engaged in the conduct complained of while acting under the color of law. Defendants are sued in their individual capacity. Defendants are United States citizen and resides in the Northern District of Illinois.

9) MPD Employees: Defendants Chief Scott Koerner, Anthony Lazzaroni, Evie Lazzaroni # 715, William Little #728, Jamal Martin #707 are employees of Village of Monee Police Department (MPD) in their position and under color and pretense of statues, ordinances, regulations, customs and usage of the State of Illinois, Will County and under color of State Law conspired with others to violate Plaintiffs U.S Constitutional protected rights. Defendants are sued in their individual capacity. Defendants are United States citizens and reside in the Northern District of Illinois.

10) NEIGHBORS: Wayne Hasser, Erwin Boggs, Roberta Boggs, David Lynch, Judith Lynch, ("NEIGHBORS").

11) At all times herein mentioned above defendants are United State citizens and residence of the Northern District of Illinois, (each, a neighbor, collectively, are residents in the Village of Monee, Will County, and Gorman Farms Estates. Defendants are United States citizens and reside in the Northern District of Illinois.

## PRE-SEPTEMBER 18, 2021
## FACTS AND BACKGROUND ALLEGATIONS

12) Kenneth Thompson, Sr, is an African American father committed to raising his children. The Plaintiff is a single parent with one remaining child at home, his 16-year-old daughter, who attends Crete-Monee High School. Plaintiff had custody of his two minor Kenneth Thompson, Sr., is an African American father dedicated to raising his children. The Plaintiff is a single parent with one remaining child at home, his 16-year-old daughter, who attends Crete-Monee High School. The Plaintiff had custody of his two minor grandchildren (ages seven and nine), who were attending Monee Elementary but have since moved with their mother.

13) The plaintiff purchased his home at 6644 W. Maple Ct in Monee, Illinois, on June 5, 2005, and the following year, he started experiencing weekly negative encounters with the "NEIGHBORS," "VOM," and "MPD."

14) Following the Plaintiff's purchase of his home at 6644 W Maple Ct, the Plaintiff and his significant other bought investment property in Monee at 6636 W. Maple Ct, Monee (next door to the Plaintiff's home), as well as other properties throughout Illinois.

15) On August 15, 2007, Plaintiff's son hosted a trunk party to celebrate his attendance at the University of Illinois at Urbana-Champaign. Plaintiff's son's friends were harassed by the MPD later that night, and two of Plaintiff's son's friends were wrongfully arrested. The Monee Police made many threats to Plaintiff's son and his friends, saying they would tow their cars once they left Plaintiff's home.

16) On June 21, 2008, Officer Drumm (DRUMM) of the MPD arrived at the plaintiff's home during his daughter's 11th birthday party and threatened to arrest the plaintiff, claiming that a "NEIGHBOR" had called to complain about noise at the plaintiff's residence. The event involved 12 children from Chicago South Loop Elementary School.

17) On May 11, 2009, Plaintiff called the Monee Police to request assistance because a trespasser was on Plaintiff's property. Officer DRUMM attempted to arrest the Plaintiff, but the Plaintiff entered his home and locked the door, following advice from Attorney Robert Sharp. Officer DRUMM was unable to arrest the Plaintiff and then left the Plaintiff's property. The entire incident was recorded on video, and the recording was given to Monee Police Chief Caruso.

18) On July 11, 2009, "NEIGHBORS" repeatedly used their residential land line phones and cellular phones and called Monee Police Department numerous times and made false allegations against Plaintiff's family, friends, acquaintances, and business associates, for example:

a) "Plaintiffs are riding all-terrain vehicles (ATV) on our property."

b) "Plaintiffs are playing loud music. I want them arrested."

d) "Plaintiffs are parking their cars on my Grass."

e) "Plaintiffs are not cutting their grass and bringing down my property value."

19) On July 11, 2009, police officers Lazzaroni, Blake, Cresenti, Fowler, Cash, and Jones arrived at the Plaintiff's home multiple times throughout the day while the Plaintiff was celebrating his birthday with seventy-five (75) guests. Officers Lazzaroni, Blake, Cresenti, Fowler, Cash, and Jones attempted to arrest the Plaintiff, but he entered his home and locked the door, following advice from Attorney Harvey Wright. The officers were unsuccessful in arresting the Plaintiff and left the property, but they returned every hour thereafter.

20) In many instances, Defendants would issue multiple tickets on the same day and at the same time, without even notifying Plaintiff of the alleged violations or providing copies of the tickets.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2007OV006963 | Collection Notice | Defendant | THOMPSON KENNETH | N/A | ATV PARKED ON GRASS | ORDINANCE VIOLATION | 08/22/2007 | 262.00 |
| 2007OV006962 | Collection Notice | Defendant | THOMPSON KENNETH | N/A | ATV PARKED ON | ORDINANCE VIOLATION | 08/22/2007 | 392.00 |

21) On August 6, 2009, Defendants VOM and MPD issued Plaintiff three alleged Code violations on the same day, for same alleged incident; each ticket was $1,952.00, **totaling $5,856.00.**

## EXTREME AND OUTRAGEOUS CONDUCT

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2009OV005764 | Collection Notice | Defendant | THOMPSON KENNETH | N/A | FAIL TO PURCHASE BLDG PERMIT | ORDINANCE VIOLATION | 08/06/2009 | 1,952.00 |
| 2009OV005763 | Collection Notice | Defendant | THOMPSON KENNETH | N/A | FAIL TO PURCHASE BLDG PERMIT | ORDINANCE VIOLATION | 08/06/2009 | 1,952.00 |
| 2009OV005760 | Collection Notice | Defendant | THOMPSON KENNETH | N/A | FAIL TO PURCHASE IT | ORDINANCE VIOLATION | 08/06/2009 | 1,952.00 |

(Note the sequential last number of the Tickets)

22) Between 2007 and 2009, Defendants VOM and MPD issued multiple code violations without even providing Plaintiff with copies or any notice.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2008OV004505 | Collection Notice | Defendant | THOMPSON KENNETH | N/A | PARKING WHERE PROHIBITED | ORDINANCE VIOLATION | 05/09/2008 | 262.00 |
| 2008OV003686 | Collection Notice | Defendant | THOMPSON KENNETH | N/A | ANIMAL NUISANCE | ORDINANCE VIOLATION | 04/16/2008 | 1,142.00 |
| 2007TR103106 | Collection Notice | Defendant | THOMPSON KENNETH | 1967 | PERMIT UNAUTHD PERSON TO DRIVE | TRAFFIC | 08/22/2007 | N/A |
| 2007TR022784 | Collection Notice | Defendant | THOMPSON KENNETH | 1967 | REGIS EXPIRATION/1ST & 2ND | TRAFFIC | 02/21/2007 | N/A |
| 2007OV009618 | Collection Notice | Defendant | THOMPSON KENNETH | N/A | PERMITTING DOG TO RUN AT LARGE | ORDINANCE VIOLATION | 11/21/2007 | 534.00 |
| 2007OV008886 | Collection Notice | Defendant | THOMPSON KENNETH | 1967 | DOG RUNNING AT LARGE | ORDINANCE VIOLATION | 11/07/2007 | N/A |
| 2007OV008885 | Collection Notice | Defendant | THOMPSON KENNETH | 1967 | DOG RUNNING AT LARGE | ORDINANCE VIOLATION | 11/07/2007 | N/A |
| 2007OV007724 | Collection Notice | Defendant | THOMPSON KENNETH | N/A | ATV PARKED ON GRASS | ORDINANCE VIOLATION | 09/26/2007 | 132.00 |
| 2007OV006963 | Collection Notice | Defendant | THOMPSON KENNETH | N/A | ATV PARKED ON GRASS | ORDINANCE VIOLATION | 08/22/2007 | 262.00 |
| 2007OV006962 | Collection Notice | Defendant | THOMPSON KENNETH | N/A | ATV PARKED ON GRASS | ORDINANCE VIOLATION | 08/22/2007 | 392.00 |
| 2007OV004701 | Collection Notice | Defendant | THOMPSON KENNETH | N/A | ATV PARKED ON GRASS | ORDINANCE VIOLATION | 06/27/2007 | 392.00 |
| 2009OV007206 | Collection Notice | Defendant | THOMPSON KENNETH | N/A | CONSTRUCTION WITHOUT A PERMIT | ORDINANCE VIOLATION | 09/10/2009 | 652.00 |

23) On July 10, 2010, “NEIGHBORS” Mayor Therese M. Bogs, Wayne Hasser, Erwin Bogs, Roberta Bogs, David Lynch, Judith Lynch, repeatedly used their residential land line phones, cellular phones to call and text the MPD and Monee Code Enforcement staff numerous times and made false allegations against Plaintiff’s family, friends, acquaintances, and business associates that:

a) “Plaintiff is riding an All-Terrain Vehicle (ATV) on our property.”

b) “Plaintiffs are playing loud music. I want them arrested.”

d) “Plaintiff are parking their cars on my grass.”

e) “Plaintiff is not cutting their grass and bringing down my property value.”

f) “Plaintiffs have their dog and toys are on my property”

24) On July 10, 2010, Police Officers Lazzaroni, Blake, Cresenti, Fowler, Cash and Jones, arrived at Plaintiff’s home several times throughout the day while Plaintiff was hosting a

business Networking Function with thirty-five (35) friends and business associates Police Officers Lazzaroni, Blake, Cresenti, Fowler, Cash and Jones, tried to arrest Plaintiff but Plaintiff entered his home and locked the door based on advice from Attorney James Hardemon. Police Officers Lazzaroni, Blake, Cresenti, Fowler, Cash, and Jones were not successful in arresting Plaintiff, and "Police Officers Lazzaroni, Blake, Cresenti, Fowler, Cash, and Jones then left Plaintiff's property, but continued to return throughout the day, harassing Plaintiff's family, friends, and business associates frequently.

25) Officer Blake attempted to arrest Plaintiff. Plaintiff, under advice of legal counsel, entered his home, locked the door, and Officer Blake attempted to enter Plaintiff's home but was stopped by residential security officer Hassen Gulen. A request for a search warrant was made to Officer Blake, but it was not produced, and Officer Blake then left the Plaintiff's private property. Officer Blake threatened the Plaintiff's family, friends, and business associates that he would be back to arrest the Plaintiff.

26) On July 9, 2011, Mayor Therese M. Bogs, Wayne Hasser, Erwin Bogs, Roberta Bogs, David Lynch, and Judith Lynch repeatedly used their home landline phones and cell phones to call and text the MPD and Monee Code Enforcement staff numerous times. They also made false allegations against Plaintiffs' family, friends, acquaintances, and business associates' wit:

a) "Plaintiffs are riding All-Terrain Vehicles (ATV) on our property."
b) "Plaintiffs are playing loud music. I want them arrested."
d) "Plaintiffs are parking their cars on my Grass."
e) "Plaintiffs' garbage can is in the street
f) "Plaintiffs are not cutting their grass and bringing down my property value."

## MONEE POLICE AND NEIGHBORS' RACIAL CONSPIRACY TO ARREST PLAINTIFF FOR ALLEGEDLY LOUD MUSIC

27) On July 9, 2011, at 5:06 pm, "MPD" police officers Lazzaroni, Blake, Cresenti, Fowler, Cash, and Jones, along with DRUMMM, arrived at the plaintiff's home several times throughout the day while the plaintiff was hosting a business networking event with forty-five (45) guests. Police officers Lazzaroni, Blake, Cresenti, Fowler, Cash, and Jones attempted to arrest the plaintiff, but the plaintiff entered his home and locked the door. "MPD" were unsuccessful in arresting the plaintiff, and the officers then left the property but continued to return throughout the day, frequently harassing the plaintiff's family, friends, and business associates.

**<u>Police Report: 07/09/2011</u>**

*"On 07/09/11 at 1706 hours, Officer Cresenti # 129 was dispatched to 6646 Maple CT for an ATV complaint. A refused caller stated that the residents at that address were driving ATVs in the field next to the house.*
*Upon arrival, I observed that there were ATVs being driven; however, they were on the owner's property at all times. I spoke with Kenneth Thompson M/B/44, who was the owner of the residence, and informed him that the ATV's had to stay on his property at all times, and he complied."* [3]*Exhibit* 1.

28) On July 9, 2011, at 7:18 pm, an absurd Complaint from the Defendant Wayne Hasser;

[3] On this date Plaintiff owned both property 6644 W Maple Ct and 6636 W Maple CT which totaled 6 acres for his children to ride their all-terrain vehicles.

## EXTREME AND OUTRAGEOUS CONDUCT

*On 7-9-11 I Ofc. Fowler was dispatched to 26634 Winfield regarding loud music coming from 6646 Maple. Ofc. Cash, Ofc. Crescenti and I responded and upon our arrival we spoke to homeowner Hasser who in summary related the following. Starting approximately 2PM on 7-9-11 loud music was being playing at 6646 Maple. It was so loud as* ***Haser was running a chain saw he could still hear the music****. As the music had been playing continually for five hours Haser wanted to file a complaint if the music was not turned down:* ***It should be noted that Haser lives over 1/8 of a mile*** *from 6646 Maple. We informed Haser we would [4]contact the homeowner Thompson. We proceeded to 6646 Maple and spoke to Thompson. Thompson stated he would turn the music down. No further action taken.*

29) On July 17, 2011**,** Defendant "NEIGHBORS" Mayor Therese M. Bogs, Wayne Hasser Erwin Bogs, Roberta Bogs, David Lynch, Judith Lynch, repeatedly used their residential land line phones, cellular phones to call and text the MPD and Monee Code Enforcement staff numerous times and made false allegations against Plaintiff's family, friends, acquaintances and business associates to wit:

a) "Plaintiffs are riding All Terrene Vehicles (ATV) on our property."

b) "Plaintiffs are playing loud music. I want them arrested."

d) Plaintiff are parking their cars on my Grass."

*see exhibit/s 1.2*

## THOMPSON VS MONEE, ETL 12 CV 05020

30) On June 25, 2012, Plaintiff filed a cause of action against the Village of Monee in 12CV05020, which was eventually dismissed, but the defendants "VOM," "MPD," and "NEIGHBORS" became less active. The Plaintiffs' harassment slowed down for an estimated

[4] A Monee trained police officer (FOWLER) did not denied or admit if upon arrival at Plaintiffs home if they heared any music, loud, offensive "anti-white racial lyrics" or otherwise.

three years. Still, when the case was dismissed on June 17, 2015, the defendants resumed aggressive retaliation with their racially motivated conspiracy and campaign to harass and intimidate the Plaintiff. The defendants planned, coordinated, and carried out harassment and intimidation actions to impose financial hardship on the Plaintiff and the Plaintiff's family.

**HARRASSMENT AT PLAINTIFF'S INVESTMENT PROPERTY**
(6636 W Maple CT)

31) On September 12, 2012**,** at 11:35 am VOM & MPD arrived at Plaintiff's investment property and because he was painting the inside of his investment property:

**Police Report 09/27/12**

*"On 09/27/12, at approximately 1135 hours.I , Sgt. Gruca #05, went to the Monee Village Hall, 5130 W. Court street, to pick up Code Enforernent Officer Carol Rak, and escort her to 6636 W. Maple Court.*

*Upon arival at 6636 W. Maple Court, we observed that the garage doors were open on the attached garage. The walk through door leading into the kitchen was also open. There was also a strong odor a paint fumes throughout the area. We also observed vent registers and air register vents laying on the concrete floor of the garage. We also obseived that* ***there was no signs of any large construction projects under way****, (drywall, plywood, lumber, saws, ect.). We approached the opened garage door and announced my office. After announcing my office a subject came into the garage through the kitchen door. Rak asked the subject who he was and he replied "you know who I am. You have been here before". I advised the subject that I did not know who he was and he identified himself as Ken Thompson.*

*Rak asked Kenneth if he was the owner of the property. Kenneth replied "yes and that he has .owned the property for about 2 months". Rak then asked him for proof of ownership and he replied" my attorney would furnish that for you". Rak then asked Kenneth for a contact telephone number and Kenneth gave her the number of 708-646-5839.*

*Rak then inquired about the work being performed inside the residence. Kenneth told her that all he was doing is painting the residence and doing some small minor repairs, like changing the fauct handle in the kitchen. Rak asked about the for rent sign that was in the front. (sign is no longer in front). Kenneth told her that his sister was going to live there, and that is why he is doing the repairs. Rak informed Kenneth that the residence would have to have a residency inspection prior to his sister moving in. Kenneth replied "No problen, just contact my attorney and set it up".*

*CE Officer Rak then advised me that there was not problems at this time and we left the residence at 1148 hours, date."*

**HARRASSMENT AT PLAINTIFF'S INVESTMENT PROPERTY**
**(6636 W Maple CT)**

32) On June 14, 2013, at 2:45 pm, MPD again arrived at the Plaintiffs' investment property. The neighbor, whom the "MPD" did not disclose, was a Village of Monee [5]employee in the Building Department. [6]*Daniel Trofimchuk III* complained about the property being vacant.

**Police Report 06/14/13**

*"Officer Bosse and I responded to the residence at 6636 West Maple Court for a complaint from Daniel Trofimchuk that the residence is vacant and the shed doors were open. He believed that someone was living in the house. When I arrived I parked on the street and exited my squad car. I did not respond with emergency lights activated nor siren activated. (Officer Bosse was already on scene) I met with and greeted Kenneth*

---

[5] Personal liability exists where the conduct occurred at the defendant's direction or with his or her knowledge and consent. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). In other words, the defendant "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988)).

[6] The police report shows the *Daniel Trofimchuk III* lives at 4721 W TULIP Monee Il which is 5 miles away from Plaintiffs home, a 12 minute ride. As of August 2025, Daniell Trofimchuk III is an employee of the Village of Monee.

*Thompson, who lives next door to the residence; Kenneth was coming from the driveway at 6636 West Maple. I know Kenneth from previous police contact.*

*I told Kenneth that we had been dispatched because the complainant believed the house was vacant and was concerned because the shed doors were open. Kenneth told me that the house is not vacant nor in foreclosure, and that it is lien free with no mortgage. I told Kenneth that we had to respond because we were dispatched, but that unless Sarah Becker (the property owner) or another individual or entity with standing to complain about occupancy this was not a police matter. I also told him that this was, as he knew from his real estate law knowledge and experience, that this was at most a civil issue.*

*I thanked Kenneth for coming out to the street to meet with and talk with us (Officer Bosse was present and witnessed this conversation). I said that this made it easy for us to resolve the issue and let him know why we had been dispatched and ensure that this was not a police matter. I returned to my squad car, advised EastCom that this was a civil matter and that I would advise the code enforcement officer of the same. Officer Bosse and I left the scene."*

33) On September 8, 2014, the Plaintiff had to file a complaint with the Chief of Police because Detective Blake tried to run the Plaintiff off the road. *Exhibit 2.*

**MONEE POLICE TAMPERING WITH CRIMINAL EVIDENCE**

34) On April 15, 2015, due to a discovery in case 12 CV 05020, Plaintiffs' attorney Douglas Harper provided the plaintiff with a CD (containing audio and video) from the Will County criminal trial for case 10 CM 2037. The CD was not the same one used at the criminal trial 10 CM 2037

35)The DVD used at trial was altered, and the following FALSE audio statements of the Monee, Police Officer Drummm **were removed** from the CD used at trial, Monee Police Officer Drummm's false statements to 911 Dispatch:

a. Video with audio, 8 minutes and 25 seconds
*"East Bound Monee 107, need a hook ten four, subject tried to run into the house"*

b. Video with audio 16 minutes and 24 seconds
*"… he tried to close the garage door"*

36) The above statements are false and never occurred, and the video proves this. The video shows a completely different situation, and that's why the Monee Police used a Video with the audio removed at Trial. *Exhibit 2.1*

37) Even the data sent to the Georgia Yeomans with the U.S. Department of Justice was intentionally altered by Defendants Officer Drumm, Officer Blake, and Chief Russ Carusso of Monee Police Department. *Exhibit 2.2*

**FROM 2015 TO AUGUST 2023, THE DEFENDANTS' RETALIATION AGAINST THE PLAINTIFF FOR EXERCISING HIS CONSTITUTIONAL RIGHTS**

38) Starting in 2015, all Defendants, including Erwin Bogs, Roberta Bogs, David Lynch, Judith Lynch, Mayor Jay Farquhar, Mayor Therese M. Bogs, Wayne Hasser Romulus Biris, Michael Kos, Officer Evie Lazzaroni, Officer Blake, Officer Drumm, Officer Jamal Martin, Officer Matthew Ludwig, and again Erwin Bogs, Roberta Bogs, and David Lynch, began an aggressive targeted campaign to bully, harass, and retaliate against the Plaintiff for asserting their constitutional rights.

39) The acts constituting harassment and retaliation by the Defendants the defendants include repeatedly issuing daily phone calls and text messages from defendants

"**NEIGHBORS**" ***(****Erwin Bogs, Roberta Bogs, David Lynch, Judith Lynch)* and **"VOM"**, *( Mayor Therese M. Bogs and Wayne Hasser)* to Defendants "**VOM**" ***(Code enforcement officers***, *Romulus Biris, Michael Kos)* and Defendants "**MPD" (** Chief Scott Koerner Officer Evie Lazzaroni, Officer Jamal Martin, Officer Matthew Ludwig). Resulting in Plaintiffs receiving warnings, tickets, and fines, improperly surveilling and patrolling Plaintiffs' home, and an attempt to intimidate, harass, and oppress Plaintiff.

40) On or around July 2015, police [7]reports will show that the Plaintiff had to call 911 because the Defendant, Wayne Hasser (at the time, the Monee Village Clerk), tried to run the Plaintiff off the road with his black Jeep.

41) On July 24, 2015, at 9:42 PM the Defendants "**NEIGHBORS"** *(Erwin Bogs, Roberta Bogs, David Lynch, Judith Lynch, and* the Defendants **"VOM"** *(Mayor Therese M. Bogs and Wayne Hasser)* again, filed a false police report against Plaintiff:

> *"Ofc Stephen Crecenti, and I ofc Teresa Cancialosi were dispatched to 6636 W Maple Ct in reference to subjects playing very loud music and that vehicles are parked in the back yard. (Be advised we had received a call 2015-09506) just prior to this at 2122 hours , for a refused complaint that a party was starting at 6644 W Maple CT and that cars were starting to gather, only two vehicles so far, and that they were pulling into the yard at 6636 W maple CT Ofc Crecenti arrived before me and spoke with Kenneth L Thompson M/B/48 and*

[7] Plaintiff submitted a FOIA request via hand delivery and email but defendants refused to provide a copy of police report.

*advised Eastcom that all the cars were parked legally so far that he could see and that the music was not loud" Exhibit 3*

**PLAINTIFFS INVESTMENT PROPERTY IN MONEE**
**6636 W Maple court**

42) Around 2014, the Plaintiff and his significant other began major renovations on the investment property he bought in late 2011.

43) In June 2015, Plaintiff's significant other (Latonia Johnson) left Plaintiff's home at around 6:00 am to retrieve her vehicle from the garage at their investment property, so that she could drive to the train station and attend work, noticed plaintiff car on fire.

44) Plaintiff immediately got dressed and ran through his yard to his investment property, where Plaintiff identified that his son's Volkswagen Passat, which was located in the grass to the left of the [8]detached two-car garage, had been incinerated. The only things left were a metal shell and some white smoke.

45) On belief, the individual(s) responsible for burning Plaintiffs son's car and vandalism are working with or at the direction of Defendants.

46)From 2015 to 2018, Defendants "MPD" and "VOM" frequently arrived at the plaintiff's investment property while he was remodeling the interior. In one instance, the chief

[8] Plaintiffs Investment property had 264 trees on the estate and the location of Plaintiffs son car was only visible if you travelled onto the end of the drive way. The driveway is 263 feet long and the drive way is blocked off by 20 feet trees. Also, The current owner of 6636 W Maple Ct, Roger Sollie testified under oath that you can not see from the street his sons truck which is in the same place as Plaintiffs son car was before it was set on fire.

of police arrived with the Village of Monee code enforcement. The defendants constantly threatened the plaintiff that he had no authority to be on his property or to perform any work on it. Due to this continued harassment, the plaintiff placed orange cones at the driveway entrance to his investment property to prevent the defendants from trespassing and to reduce the harassment from the defendants. Carol Rak and Daniel J. Trofimchuk III are employees of the defendant the Village of Monee, and at the direction of the defendants, these employees who all live over 6 miles away from plaintiff, have called the Police on the Plaintiff, complaining about the Plaintiff's investment property 6636 W Maple CT:

> Police Report
> Defendant Employee Daniel J. Trofimchuk III
> *"Officer Bosse and I responded to the residence at 6636 West Maple Court for a complaint from Daniel Trofimchuk that the residence is vacant and the shed doors were open. He believed that someone was living in the house. When I arrived I parked on the street and exited my squad car. I did not respond with emergency lights activated nor siren activated. (Officer Bosse was already on scene) I met with and greeted Kenneth Thompson, who lives next door to the residence; Kenneth was coming from the driveway at 6636 West Maple. I know Kenneth from previous police contact.*
>
> *I told Kenneth that we had been dispatched because the complainant believed the house was vacant and was concerned because the shed doors were open. Kenneth told me that the house is not vacant nor in foreclosure, and that it is lien free with no mortgage. I told Kenneth that we had to respond because we were dispatched, but that unless Sarah Becker (the property owner) or another individual or entity with standing to complain about occupancy this was not a police matter. I also told him that this was, as he knew from his real estate law knowledge and experience, that this was at most a civil issue.*

*I thanked Kenneth for coming out to the street to meet with and talk with us (Officer Bosse was present and witnessed this conversation). I said that this made it easy for us to resolve the issue and let him know why we had been dispatched and ensure that this was not a police matter. I returned to my squad car, advised EastCom that this was a civil matter and that I would advise the code enforcement officer of the same. Officer Bosse and I left the scene."*

Carol Rak

*" at approximately 1135 hours.I , Sgt. Gruca #05, went to the Monee Village Hall, 5130 W. Court street, to pick up Code Enforernent Officer Carol Rak, and escort her to 6636 W. Maple Court.*

*Upon arival at 6636 W. Maple Court, we observed that the garage doors were open on the attached garage. The walk through door leading into the kitchen was also open. There was also a strong odor a paint fumes throughout the area. We also observed vent registers and air register vents laying on the concrete floor of the garage. We also observed that there was no signs of any large construction projects under way, (drywall, plywood, lumber, saws, ect.). We approached the opened garage door and announced my office. After announcing my office a subject came into the garage through the kitchen door.* ***Rak asked the subject who he was and he replied "you know who I am. You have been here before"****. I advised the subject that I did not know who he was and he identified himself as Ken Thompson.*

*Rak asked Kenneth if he was the owner of the property. Kenneth replied "yes and that he has .owned the property for about 2 months". Rak then asked him for proof of ownership and he replied" my attorney would furnish that for you". Rak then asked Kenneth for a contact telephone number and Kenneth gave her the number of 708-646-5839.*

> *Rak then inquired about the work being performed inside the residence. Kenneth told her that all he was doing is painting the residence and doing some small minor repairs, like changing the fauct handle in the kitchen. Rak asked about the for rent sign that was in the front.* **(sign is no longer in front***). Kenneth told her that his sister was going to live there, and that is why he is doing the repairs. Rak informed Kenneth that the residence would have to have a residency inspection prior to his sister moving in. Kenneth replied "No problen, just contact my attorney and set it up".*
>
> *CE Officer Rak then advised me that there was not problems at this time and we left the residence at 1148 hours, date."*

**EXTREME AND OUTRAGEOUS CONDUCT WHEN THE POLICE ARE CALLED BECAUSE THE PLAINTIFF WAS PAINTING HIS PROPERTY.**

47) On July 22, 2015, the defendant neighbor, David Lynch, son of Michael Lynch, was caught on the plaintiff's video surveillance trespassing on the plaintiff's investment property. He removed all the orange cones and threw them into the grass near the plaintiff's primary residence. The plaintiff called 911, and after showing the MPD the video of the incident, the Monee Police arrested the defendant's son, Michael Lynch (*People of the State of Illinois vs. Michael D Lynch,* 2015CM00218). However, the MPD never provided the plaintiff with a court date, so the Assistant State's Attorney dropped the charges.

**Charge 01 Count 001 CRIMINAL TRESPASS TO LAND**

08/25/2015 Statute 720 5/21-3(a)(2) Class B Orig.
Agency: MONEE VILL Charge Instr: COMPLAINT

48) Based on information and belief, all defendants helped Michael Lynch set the Plaintiffs' son's car on fire while Plaintiffs' son, was in his first year of law school.

49) **From 2016 to 2018, Defendants VOM and MPD** started taping numerous code violations and police tickets taped to the front door of Plaintiff's investment property, and those fines had to be paid when Plaintiff sold the asset. Ironically, defendants VOM and MPD issued multiple code Violations and tickets for the burnt car, even though the car was not [9]visible from any street view, and the car was burnt immediately due to the use of some form of accelerant, leaving very little smoke. Plaintiff did not file an insurance claim due to concern of his rates increasing.

**DEFENDANTS SLANDER AND DEFAMATION**

50) On August 10, 2016, Plaintiff had finally finished the remodeling of his investment property (6636 W. Maple CT) that was located directly south of Plaintiff's home. Plaintiff retained the services of an Illinois real-estate broker so that he could sell the home. https://www.realtor.com/realestateandhomes-detail/6636-W-Maple-Ct_Monee_IL_60449_M89540-18910 The Defendants **"VOM"** (*The Village of Monee, an Illinois Municipal Corporation*) and the Defendants **"VOM"** employee/Vendor of Safe built, Named Bill Raglin notified Plaintiffs Real-estate Broker in writing and over the phone;

[9] Roger Sollie current owner of 6636 Maple CT testified that his son Truck F150 that was in the grass is not visible from the street and both vehicles were in identical places just at different time periods.

*"The Village of Monee is in possession of a Complaint filed saying ken has no authority to rent the house…." Thompson is a squatter same as he was down on Winfield…"*

51) The Plaintiff spoke with his attorney, Chris Gekas, who advised him to go immediately to the Village Hall to get a copy of the alleged complaint. The Plaintiff drove to Monee Village Hall and met with Bill Regan, who provided him with a two-sentence typed statement. However, no documentation that represented a complaint was given to the Plaintiff.

*Exhibit 4*

52) As a result of the Defendants' "VOM" (The Village of Monee, an Illinois Municipal Corporation) making false, defaming verbal and written statements, Plaintiffs' broker withdrew Plaintiffs' listing from the MLS to sell the home. Consequently, Plaintiff had to contract with another broker, Sun Realty, which eventually led to a successful sale of the asset. However, these delays caused Plaintiff to incur additional expenses for real estate taxes, maintenance, and interest.

53) On August 10, 2016, Plaintiff requested to speak with the *Mayor Jay Farquhar* about the continued harassment but the Mayor of Monee, Jay Farquhar, was not available because on the same day he was charged with Felony aggravated batter in case 2016CF001711 PEOPLE OF THE STATE OF ILLINOIS vs. JAY A FARQUHAR for his conduct on June 6, 2016.

*https://www.chicagotribune.com/suburbs/daily-southtown/ct-met-ex-monee-mayor-pleads-guilty-20180628-story.html*

> *Jun 28, 2018 — Former Monee Mayor Jay Farquhar pleaded guilty on June 28, 2018, to aggravated battery, court records show ...*

54) On August 29, 2017, Defendants "VOM" continued targeted harassment and intimidation by arriving at Plaintiff's Home with two Village employees which confronted Plaintiff and stated:

*"We got a call that you were burning stuff in your yard."*

Even though Plaintiff paid for permits that were approved by the defendants to build his brick Paver patio and fireplace.

55) On July 10, 2018, Defendants Chief Scott Koerner, Evie Lazzaroni # 715, William Little #728, and *Officer Jamal Martin #707* illegally removed Plaintiffs' minor child from Plaintiff's custody, in the absence of any court order or DCFS investigation. Defendants knew or should have known that Plaintiff's minor child lived with him and attended Monee Elementary for four (4) years. Defendants also had access to the Monee Elementary Data to confirm "KRT" was domiciled at the Plaintiffs' residence.

56) The defendant's conduct was extreme and outrageous. The minor child's well-being was irrelevant to the defendants; this was another chance to retaliate against Plaintiff illegally.

57) Plaintiff successfully filed emergency motions resulting in a court order from both a Will County Judge and a Cook County Judge, 30 days later, returning the minor child to Plaintiff, and to date, Plaintiff has had custody of his minor child. Exhibit 5.

The Defendants "MPD" *(Chief Scott Koerner Officer Evie Lazzaroni, Officer Jamal Martin, Officer Matthew Ludwig)*

significantly fabricated Police reports relating to "MPD" interaction with Plaintiff's Attorney.

58) In August 2019, the Defendant "NEIGHBORS**"** *(David Lynch)* banged on Plaintiffs front door very hard and loud, The Plaintiffs went to answer his door:

> Defendant, David Lynch: *"kenny, I found some dog sh—on my back door did you do that?" ( his dominor was very aggressive, and he had both his fist balled up and elevated)*
>
> *Plaintiff: Shut his front door and locked the door without any response to defendant David Lynch*

59) On March 11, 2019**,** Defendant "NEIGHBORS" Erwin Bogs continued targeted harassment and intimidation, yelling at Plaintiff from his driveway:

> *"Kenny, you need to move all those campers in your driveway way this is not that kind of neighborhood."*

60) On March 12, 2019, the very next day, the Defendants "VOM" (*The Village of Monee, an Illinois Municipal Corporation*) continued targeted harassment and intimidation, alleging that Plaintiff's friend's camper, which was parked legally in Plaintiff's own driveway, but allegedly should be ten (10) feet further in Plaintiff's way. Exhibit 6.

61) Directly across the street from the Village of Monee are two campers at different address's, eight (8) to ten feet from the street. Then throughout the entire neighborhood are many campers (as of November 25, 2025) at different residence addresses, and some are 2 to 4 feet from the sidewalk. *Exhibit 6.1-5.*

62) Plaintiff was cited for an inapplicable code provision, as Plaintiff does not reside in the Village of Monee, and the code was designed to protect the Village's plumbing and electrical resources/equipment. Plaintiff has no water bill or city resources because Plaintiff has his own Well and septic tank, not to mention the camper was at all times on Plaintiff's private property completely. *Exhibit 7.*

63) All defendants, on a daily basis, traveled specifically to the defendants' home to intimidate, harass, and oppress the defendant by issuing warnings, citations, fines, and tickets for whatever the defendants could imagine, from visible garbage cans to ATVs on the grass.

**DEFENDANTS' RACIALLY MOTIVATED DISCRIMINATORY BEHAVIOR THROUGH SELECTIVE CODE ENFORCEMENT**

("*similarly," situated" comparators*.")

64) At 5215 W Main Street, Monee, (MPD is located at 5357 W Main St, Monee, IL 60449). The Picture below depicts the exact same circumstances for which the defendants have allegedly cited the Plaintiff.




65) Discovery has confirmed that the residence at 5215 W Main Street has not received any warnings, tickets, or fines for this code violation.

66) As of November 24, 2025, the following campers are four (4) feet from the sidewalk, which is two (2) minutes from the Monee Police Department and three (3) minutes from the Village Hall.



TEN FEET RULE DOES NOT APPLY TO THE ABOVE RESIDENT

67) Plaintiff is targeted by the defendants' Illegal and unconstitutional acts during this litigation. Plaintiff has over 20 new exhibits showing code enforcement infractions as of November 24, 2025, and discovery shows that these residences have not been issued any warnings, citations, or tickets for the exact same warnings, tickets, and fines that Plaintiff received.

A. Monee Village Hall 5130 W Court Street, Google Maps indicates that the above Picture/5215 W Main Street is 1 minute from Village Hall by car or 2 minutes by bike.

B. The Monee Police Department, located at 5357 W Main Street, is 1 minute by car or 1 minute by bike from the above picture of 5215 W Main Street, according to Google Maps.

C. This 5th wheel Trailer is within the Village of Monee's inner city limits, and the residence uses the VOM water and drainage systems, unlike Plaintiff.

68) On July 2, 2019, around 3:50 pm, Plaintiff was driving his vehicle in Plaintiff's subdivision of Gorman Farm Estates. Plaintiff was traveling northbound on Winfield Road, and Plaintiff noticed an African American woman known as "SR" of Gary, Indiana, in the road crying while on a cell phone. She was 15 feet away from an Amazon truck (Indiana Plate TK388NQF) that was in the ditch in front of defendant Wayne Hisser's home.

69) Plaintiff turned his vehicle around to help the woman in distress, and when Plaintiff approached the African American woman, she stated to Plaintiff.

> *"This white man ran me off the road and stated Black bi--- doesn't come back in this neighborhood or else…."*

70) Plaintiff questioned the Amazon worker as to what white man and the Amazon employee pointed to defendant Wayne Hisser.

71) Plaintiff used his vehicle to pull the Amazon truck out of the ditch.

Exhibit 8




**VILLAGE CLERK AND AMAZON July 2, 2019, POLICE REPORT**

*"On 07/02/19 at 1608 hours, I sergeant Anthony Lazzaroni revived a dispatched call for a motorist assist with a truck stuck in the grass in front of 26700 S Winfield Rd.*

*Upon my arrival, I spoke with* "SR" of Gary Indiana *she was delivering for Amazon Prime on Winfield Rd, when a male on a riding lawn mower entered the street.* "SR" of Gary Indiana *Honked her horn for the subject to move* ***but he gave her the finger****.* "SR" of Gary Indiana *then she had to take evasive action and drove off the roadway getting truck stuck in the grass. The male subject came over and said, "****that's why your black ass is supposed to stay on the sidewalk****".* "SR" of Gary,

Indiana, *felt alarmed by his actions,* "SR" of Gary, Indiana, *said she called her supervisor…"*

This police report does not mention:

a. Plaintiff's assistance to the distressed female.

b. The police report does not mention that Plaintiff pulled the Amazon Truck out of the ditch.

c. Police report does not mention Plaintiffs detailed conversation that he had with officer Lazzaroni about his own personal encounter with Defendant, Wayne Hasser, The Village Clerk running him off the road.

> *"Plaintiff: This must stop. There are documented reports of Mr. Hisser doing the same thing to me in his Black Jeep. I had to call 911 for the exact issue. The Monee Police need to deal with this issue before he kills someone."*

d. Amazon employee's statements in the Police report do not include what she told Plaintiff

> "*Black bi--- don't come back in this neighborhood or else…."*

The defendant, Mayor Bog's husband, Defendant Wayne Hasser, according to the Plaintiff's firsthand knowledge, ran a Black female Amazon employee off the road with his tractor mower and made the aforementioned racial remark to the Amazon driver, leading the employee to call 911.

Defendant, Wayne Hasser, was a Government employee with the Village of Monee who maintained the position of the Village Clerk at this time and abused his power as usual with Flagrant disregard for the constitutional rights of U. S. Citizens.

*Exhibits 8 & 9*

72) Defendants' "VOM" code-enforcement officers began driving by Plaintiff's home daily. When the defendants got to Plaintiff's house, they would slow their vehicle down and, in many instances, stop in front of Plaintiff's home just to scare and intimidate Plaintiff. Code enforcement vehicles would come to a crawl, if not a complete stop, frequently in front of Plaintiff's residence, looking for any excuse to harass Plaintiff.

73) December 1, 2020, as a result of the emotional pain and suffering Plaintiff was experiencing from the defendants' continued Harassment and threats about his RV being in his own driveway, Plaintiff started looking for a storage facility to relocate his RV from his own property.

74) On December 3, 2020, Defendants "VOM" continued targeted harassment, intimidation, and threats toward Plaintiff.

***NOTICE OF CODE NON-COMPLIANCE***
***5-3-29: NUISANCES***

*Exhibit 10*

*75)* In March 2021, Plaintiff decided to relocate his RV to Life Storage at 7700 W 79th Street, Bridgeview, IL. The following month, Plaintiff moved his RV to storage unit P333, which cost Him $264.32 per month. *Exhibit 10.1-10.3.*

**DEFENDANTS SLANDER AND DEFAMATION AGAIN**

76) On May 7, 2021, Defendants Erwin Bogs and Wayne Hasser filed an anonymous false complaint via Wayne Hasser's email (whaser7429@att.net) to ARDC. The Defendants "**NEIGHBORS"** *(Erwin Bogs, Wayne Hasser,* to ARDC, Anonymous No. 2021IN1350: The defendant's behavior was done out of sheer malice and ill will.

> *"My understanding is that a neighbor has been investigated for* [10]*impersonating an Attorney. I also believe he is a convicted felon. He resided in Monee, IL, on Maple CT His car now has magnetic signs advertising TLG, a legal Group. I thought you might be interested.*
>
> *Kenny Thompson*
> *6644 Maple CT*
> *Monee, Il 60449*
> *No Phone Available to me"*

*Exhibit 11*

Defendants Erwin Bogs and Wayne Hasser were fully aware that Plaintiff's son is an Attorney and that the signage on Plaintiff's vehicles was legal marketing material to promote Plaintiff's son's new Law Firm. Defendants harbor a serious animosity toward Plaintiffs' entrepreneurial energy and business success, which intensified when Plaintiff acquired additional real estate assets in Monee Town.

---

[10] All defendants were fully aware that Plaintiffs son (Attorney Keenan Thompson) is the owner of TLG, Thompson Law Group, PC which is and was available Publicly via the internet.

**POST SEPTEMBER 18, 2021**
**FACTS AND BACKGROUND ALLEGATIONS**

The Discovery process in this litigation has confirmed Plaintiffs' allegations of invidious discrimination. For example, Discovery has shown that Plaintiff has received more than double the warnings, citations, and tickets than any other [11]resident in his subdivision, Gorman Farm Estates. The exhibits and witnesses' testimony in this amended complaint prove that the defendants targeted Plaintiff and ignored other residences with the exact same alleged code violations. In addition, the "VOM" defendants' employees leave their "work parking lot" directly across the street, which is two campers at different addresses, one nine (9) feet from the street and another six (6) feet from the street. One was in the grass for three (3) years, but discovery has proven that no tickets were ever issued to these residences. Moreover, directly across the street from the "MPD" is an abandoned car with a flat tire in the grass, as of *November 25, 2025*. The defendants travel through the Village of Monee (four (4) miles, and eleven minutes driving) and ignored dozens of visible code violations day after day, year after year, just to arrive at the Plaintiffs' home and issue warnings, citations, and tickets without a rational basis. As of November 25, 2025, within half a mile of the defendants, both VOM and MPD's physical buildings that the employees arrive and depart from every day are the following situated comparators:

- ✓ Multiple abandoned cars, some with weeds and grass growing around them

[11] There is six cul-de-sac's in Plaintiffs subdivision (Spruce CT, Cedar CT, Birch CT, Bradford CT, Gorman CT & Maple CT) Plaintiff is in the last cul-da-sac of his subdivision

- ✓ Multiple Campers/trailers are parked on the grass and less than four (4) feet from the street

Discovery has shown that the attached *Exhibits 11.1–11.18* have not received any warnings, citations, or fines for the present alleged code violations, but Plaintiff has included them through the summer of 2025. *Exhibits 11.1-11.18.*

Also, the defendants continued their selective campaign of harassment during this litigation and through the summer of 2025. Plaintiff has received repeated warnings, tickets, and fines, including daily surveillance of Plaintiff's property.

The 24 new exhibits and witness testimony will show that the defendant orchestrated a campaign of official harassment directed at Plaintiff, which is further confirmed by discovery showing that the similar situated residence did not get warnings, tickets, or fines in Plaintiff's subdivision of Gorman Farm Estates.

77) On March 16, 2022, the Defendants "**VOM**" *(Mayor Therese M. Bogs*, *Romulus Biris, Michael Kos)* continued targeted harassment and intimidation when code enforcement officer Romulus Biris complained about the plaintiff's camper being on the grass in the [12]rear of his home. *Exhibit 12*.

78) Two blocks from "MPD" are two campers three (3) feet from the side sidewalk in the same driveway and have been there for four years. *Exhibit 6.1.*

[12] Plaintiff voluntarily relocated the camper to the rear of his home because of the continued harassment, insults and complaints from the MPD, VOM and "NIEIGHBORS" about two campers being on Plaintiffs front driveway but 2 blocks from Monee Police station are two campers in drive way for four years .

79)At this point, Plaintiff decided to schedule a meeting personally with Defendants "VOM" Code enforcement employee Romulus Biris to try and determine why the defendants are targeting Plaintiff only:

> *Walking to the end on Plaintiff's estate and Plaintiff showed defendant Romulus Biris Plaintiffs neighbors at 51.1= 6636 W Maple CT two (2) campers exactly 16 feet from Plaintiffs camper that was on the grass and Plaintiff informed Defendant Romulus Biris that eight (8) other houses have campers, boats and trailers in the grass why is Plaintiff being singled out and harassed. Then Plaintiff mentioned to defendant over 2 dozen similar situated residence but defendant replied…"NO ONE IS CALLING ABOUT THEM"*

51.2=26323 Gorman Trail (Boat on the Grass) "similarly situated" comparators



**51.3= 6423 Spruce Ct (Boat on the grass) "similarly situated" comparators**




**51.4= 6641 Birch Ct (trailer with flat tire) "similarly situated" comparators**



**51.5= 6653 Bradford Ct (double axel trailer on gravel for 2 years) and house is directly behind Plaintiffs residence.**

*Exhibits 13.*

**PLAINTIFFS' EFFORTS TO COMPLY WITH CODE ENFORCEMENT**

80) On May 25, 2022, Plaintiff <u>was just exhausted</u> from the "all" Defendants' continued targeted harassment, intimidation, verbal warning, written warning, tickets, fines, so Plaintiff started soliciting quotes to build a concrete pad in the rear of his estate, a new driveway, and landscaping for his entire estate.

81) Even though his neighbors had multiple vehicles on the grass, including a trailer, which is on gravel at 6653 Bradford, the courthouse is directly behind Plaintiff. Camper/s /s were on the grass at 6636 W Maple CT ( a year later, 2023 pictures). Video and documented Police written reports still show a camper is 16 feet from plaintiffs' camper.

82) Based on the defendants' discovery Bates number 0001-1159, no village warnings, tickets, or citations have been issued at those addresses, and none have been issued since after Plaintiffs' initial complaint was filed.

83) The Defendants "NEIGHBORS**"** *(Wayne Hasser, Erwin Bogs, Roberta Bogs, David Lynch, Judith Lynch)* targeted and singled out Plaintiff because defendants did not like the black man that lived across the street from Plaintiff and defendants Erwin Bogs previously was employed with the Village Of Monee and because Erwin Bogs Daughter is the current Mayor and his Son in law was Village Clerk for two years, The Defendants "**NEIGHBORS"** *(Erwin*

*Bogs, Roberta Bogs, David Lynch, Judith Lynch,* The Defendants **"VOM"** *(Mayor Therese M. Bogs and Wayne Hasser)*believed they could abuse their power by excessively making complaining phone calls to "MPD" and "VOM" code enforcement staff resulting in daily harassment, intimidation and threats against Plaintiff and Plaintiffs family including but not limited to: issuing multiple verbal and written, citations and tickets to Plaintiff and Plaintiffs Family.

84) The Defendants "NEIGHBORS" *(Erwin Bogs, Roberta Bogs, David Lynch, Judith Lynch,* The Defendants "VOM" *(Mayor Therese M. Bogs and Wayne Hasser)* The Defendants "VOM" (*The Village of Monee an Illinois Municipal Corporation*) The Defendants "VOM" *(Mayor Jay Farquhar, Romulus Biris, Michael Kos)* believed they could violate Plaintiffs and Plaintiffs family's constitutional rights without any ramifications behind their constitutional violations. Plaintiff personally complained to Defendants "MPD" about these issues and Plaintiffs attached exhibits include documented Police reports where officers confirm in writing they observed other campers on the grass at the house directly to Plaintiff's south side of his residence (which was Plaintiff's investment property that he sold)

85) On June 1, 2022, Plaintiff retained the services of a sub-contractor to assist Plaintiff with excavation and pouring concrete for an RV slab that the "all" Defendants have been harassing and complaining to Plaintiff about, in addition, Plaintiff obtained the necessary permits from the defendant "VOM".

VILLAGE OF Monee

**Invoice For Permit:** P22-06-059
Print Date: 06/28/2022

5500 W Wilson St
Monee, IL 60449
(708) 534-8303

THOMPSON KENNETH N
6644 W MAPLE CT
MONEE IL 60449

**Pay by Account In Full**
**Pay by Account In Full**
**$ 210.00**

| Invoice No | Invoice Date | Permit Number | Address | Amount Due |
|---|---|---|---|---|
| 00001261 | 06/29/22 | P22-06-059 | 6644 W MAPLE CT | $ 210.00 |

| Fee Details: | Quantity | Description | Amount Cost | Balance |
|---|---|---|---|---|
| | 1.000 | Replace Driveway | $100.00 | $ 100.00 |
| | 1.000 | Concrete Pad | $110.00 | $ 110.00 |
| Total Amount Due | | | | $ 210.00 |

***Exhibits 14***

86) On July 3, 2022, Plaintiff also decided this would be a good time to complete a new driveway, new landscaping, add 24 recessed led lights in his soffit, some brick work on his home, power wash the entire brick home, clean all windows and gutters and add a 3000-gallon Pond.

**Driveway Excavation at Plaintiffs residence of 6644 W Maple Ct**



**RV Concrete Slab excavation at Plaintiffs residence of 6644 W Maple Ct**



**Pond excavation at Plaintiffs residence of 6644 W Maple Ct**




**Equipment used to Clean Bricks, windows, gutters and install lighting in soffit**



*Exhibits 15*

## EXTRODINARY AND OUTRAGEOUS CONDUCT

87) On August 22, 2022, despite Plaintiffs' expensive efforts to comply with the “ALL” defendants' demands, discriminatory actions and targeted harassment during Plaintiffs' massive construction phase, which was anticipated to take five (5) months to complete. Defendants (VOM) started writing tickets within 60 days again (trailer on the grass) during the Plaintiffs' construction Phase, and the permits were valid for six (6) months, but less than 60 days into this construction, the tickets started again.

With permits for a new driveway and a concrete RV slab, Plaintiff had no place to put his campers but in the grass on his property, and He was within his legal rights because active permits were on file with Defendants.

*Exhibit 16*

Ironically, exactly sixteen (16) feet from Plaintiff's RV were two more RVs on grass at the neighboring property of 6636 W Maple CT Plaintiff demanded that MPD/defendants travel onto his estate and view the other two RVs in the grass.

Audio and video surveillance will show Defendant*, Romulus Biris* walked on to Plaintiffs property to the end of Plaintiffs’ RV and stated:

> *“Are you filing an official complaint cause if so then then I "might consider doing something”.*

**DEFENDANTS SELECTIVE CODE ENFORCEMENT THAT IS RACIALLY MOTIVATED**

88)Kyle Toutghes testified during his deposition that:

*"I can see the Village Hall from my front lawn and the Village LED Sign"*

*"My Camper has been here since we moved in"*

*"I have never got a ticket for my Camper"*

Kyle Toughtes and Therese Smith have had their Camper on the grass in their front yard for more than two years and have never moved their camper since they bought their home on September 21, 2021. Kyle sold his camper in 2024. Ironically, the camper is very visible from Monee Village Hall and Court Street because the Village of Monee employee parking lot is directly across the street from the Smiths Camper.

5203 W Court Street Camper on grass since September 21, 2021

**"Similarly *situated" comparators***





89) The VOM defendants drives pass the Smiths rv that is in the front of the smiths home in the grass every day to arrive and depart for Village business and other work-related business.

90)Four weeks [13]after Plaintiff filed his federal lawsuit against the defendants, The "VOM" requested that the Smiths relocate their RV.

91)Defendants "VOM" have a financial interest in the citations that come before the municipal court because all the tickets issued to Plaintiff were written by the same two VOM-hired code enforcement officers, were prosecuted by VOM-hired prosecutors, and Plaintiffs were found guilty by a VOM-hired hearing officer, all of which serve the VOM as the ultimate authority.

---

[13] The US postal employee "FREEMONT" hand delivered copies of Plaintiffs complaint to defendants on September 29, 2023, and Plaintiff emailed the same to the "VOM" and "MPD"

92)Code enforcement officers and police officers drive past the Plaintiffs' home daily, sometimes several times each day.

93)On belief, various "VOM" and "MPD" employees officials fabricated and exaggerated such complaints as a pretext to issue "THOMPSON" verbal warning, written warnings, citations, and fines, spearheaded BY THE Mayor Therese Bogs.

94) On March 15, 2023, Defendant "NEIGHBORS" Roberta Bogs (The Mayors Mother) traveled onto plaintiff's property, walked to his garage door and stated

> *"Ken, can you do something about your led lights they are shining through my front window at night"*

Plaintiff just ignored the defendant because he knew that was a dishonest statement, not to mention the house next to the defendant has similar, if not the same, LED lights.

95) On April 12, 2023, Plaintiff was in front of his home at the end of the driveway with both Garage doors open and a garden utility cart at the end of his driveway**.** Defendant "VOM" code enforcement Defendant, Michael handed Plaintiff the attached warning.

**VILLAGE OF MONEE PROPERTY CODE COMPLIANCE NOTICE** date issued 04 12 2023

Your property at 6644 MAPLE CT has the following code issue/s:

| | | Code |
|---|---|---|
| ✓ | garbage/recycling cans are not out of public view | 4-1-7 |
| | garbage or cans at curb before noon the day before pickup | 4-1-7 |
| | garbage or cans left at curb later than 7pm on collection day | 4-1-7 |
| | grass or weeds taller than 6" | 4-2-2 |
| | vehicle parked on grass or gravel | 5-3-29 |
| | inoperable vehicle (tires flat or off, registration expired, etc.) | 9-8-1 |
| | fence needs repair, replaced, or removed | 11-6-7 |
| | permit required for dumpster or mobile storage container | 9-12-3, 9-11-2 |

**** Issue/s must be resolved *before* 8am on 04-13-2023
Code issues not resolved may result in fines.

Contact us: email-- buildingservices@villageofmonee.org
phone-- 708-534-8303
Most codes can be found at: https://codelibrary.amlegal.com/codes/moneeil/latest/overview
Building permits are required for some work, please contact us to verify!

Plaintiff: *"Why are you giving me this warning"*

Defendant Koss: *"oh I did not see you outside working on your yard"*

Plaintiff: *"Why are you lying you see I got all these cameras on my house; you guys need to leave me alone"*

Defendant Koss, then drove away and Plaintiff called Monee Police to file a complaint against the **"VOM"** and the **"NEIGHBORS"** for harassing him.

Plaintiff was outside since 6am, manicuring his exterior estate utilizing his trash can/s and his DeWalt garden equipment to groom his lawn and trees. [14] *Exhibits 17.*

Plaintiff will show the courts and Jury that from April 23, 2023, through March 5, 2025, it was very normal for residents in Gorman Farm Estates to have three to four garbage cans visible. On the single date of March 5, 2025, Plaintiff has attached 15 exhibits from fifteen different residences in his subdivision, all with multiple Garbage Cans visible.

---

[14] Even the Police report is fabricated with statements that Plaintiff never made such as *"KENNETH ADVISED HE OWNS THOMPSON LAW GROUP"* Plaintiff never made any such representations to defendants Officer Matthew Ludwig.

Discovery shows Defendants did not start enforcing this said ordinance until 60 days after the court memorandum of February 2, 2025. Discovery also reveals that Plaintiff was deliberately singled out for adverse differential treatment by the defendants.

96) On April 25, 2023, Defendant "NEIGHBORS" Roberta Bogs (The Mayors Mother) traveled onto plaintiff's property, walked to his garage door and :

> *"Ken, I thought I told you to do something about your led lights they are shining through my front window at night."*
>
> Plaintiff calls the Police again [15]*see exhibits 17*
>
> *Plaintiff: I just want to be left alone, please tell her to stop trespassing on my property with these demands on what I should do with my home.*
>
> *Defendant* Officer Matthew Ludwig*: Ken what can we do to squash this*
>
> *Plaintiff: Tell her to just move.*
>
> *Defendant* Officer Matthew Ludwig*: Well, the Village will just keep giving you tickets*
>
> What's even more amazing is the House directly next to Defendant Neighbors Erwin and Roberta Boggs have LED lights also and based on belief no one has complained about their lights. "similarly situated" comparators

---

[15] Even the Police report is fabricated with statements that Plaintiff never made such as "KENNETH ADVISED HE OWNS THOMPSON LAW GROUP" Plaintiff never made any such representations to defendants Officer Matthew Ludwig.



**DEFENDANTS RETALIATION AGANST PLAINTIFF**

Once Plaintiff started complaining to the "MPD" about the Defendant, Mayor Bogs' mother and father, harassing Plaintiff about his RV, LED light on his home, working on his cars in his driveway, then the defendants got more aggressive in Patrolling Plaintiff's home.

97) On April 25, 2023, Defendants "VOM" and "MPD" started driving by Plaintiffs home more frequently and even started writing tickets to any cars that were parked in front of Plaintiffs home.

Ticket written April 26, 2023, at 1:00 am ($75.00)

*Exhibits 18*

Plaintiffs neighbor directly to his left, Roger Sollie (6636 W maple court/Plaintiffs Investment property that he sold) to Plaintiff has had multiple Guest vehicles (Black Cadillac Escalade Plates PB 49684 and Plates 1E721 FF) parked in front of their home

and even Plaintiffs home at 1:00 am and discovery shows no warning, citations or fines were issued to Roger Sollies Guest. Roger Sollie testified under oath during his deposition of November 25, 2025:

> *"I have a lot of party's at my Home",*
> *"My guest has never got a ticket from "MPD"*
> *"MPD has never threatened to tow my guest cars"*
> *"I have never got a ticket for my [16]campers being in the grass"*
> *"I have never received any tickets from Village of Monee"*
> *"Yes, that's my dune buggy on the street"*
> *"Yes, my washer and dryer were left out on the street from Thursday night until Sunday morning and I never got a warning or ticket."*

*Exhibit 18.0-18.11.*

98) On April 28, 2023, Defendant David Lynch drove his lawnmower to Plaintiffs mailbox while Plaintiff was retrieving his mail, and the following dialogue took Place:

[17]Defendant Lynch: *"Ken why did you call the Police on Roberta"*
*We have really been giving you a break lately you need to be careful*
*and watch yourself….unless you want more problems, this is our Town.*

Plaintiff ignored Defendant Lynch and turned around and walked down his drive way.

**MORE SELECTIVE CODE ENFORCEMENT**

99) On July 21, 2023, Plaintiffs was outside since 7:00 am working on repairs to his automobile that he just started on July 19, 2023.

---

[16] see Monee Police report exhibit 19 of July 23, 2023.

[17] Please note: Defendant David Lynches Demeanor was very intimidating, and he was biting his bottom lip with his middle index finger pointed at Plaintiff.




UNITY
STRUT ASSEMBLY
TRQ

Plaintiff approached the Defendants Michael Koss and inquired as to why they are parked in front of his home and defendants code enforcement officer replied.

*Defendant" "Your Vehicle has been like that for quite some time and you need to do those repairs in your Garage"*

*Plaintiff replied: After you People burned my son's car, I installed 12 cameras and the Video will show that the car HAS ONLY BEEN Jacked up for 2 days"*



VILLAGE OF MONEE PROPERTY CODE COMPLIANCE NOTICE date issued 7-21-2

Your property at 6644 Maple CT has the following code issue/s:

| | | Code |
|---|---|---|
| ____ | garbage/recycling cans are not out of public view | 4-1-7 |
| ____ | garbage or cans at curb before noon the day before pickup | 4-1-7 |
| ____ | garbage or cans left at curb later than 7pm on collection day | 4-1-7 |
| ____ | grass or weeds taller than 6" | 4-2-2 |
| ____ | vehicle parked on grass or gravel | 5-3-29 |
| ✓ | inoperable vehicle (tires flat or off, registration expired, etc.) | 9-8-1 |
| ____ | fence needs repair, replaced, or removed | 11-6-7 |
| ____ | permit required for dumpster or mobile storage container | 9-12-3, 9-11-2 |

**** Issue/s must be resolved *before* 8am on 7-25-2023

Code issues not resolved may result in fines.

Contact us: email-- buildingservices@villageofmonee.org

phone-- 708-534-8303

Most codes can be found at: https://codelibrary.amlegal.com/codes/moneeil/latest/overvi

Building permits are required for some work, please contact us to verify!

Ironically, the house directly to Plaintiffs' left has had a crashed vehicle in their driveway for 26 months, and the below vehicle is actually 69 feet from Plaintiffs ' driveway. Discovery shows that defendants did not ask this residence to move the vehicle <u>until after</u> Plaintiff filed his complaint in September 2023.

26815 Winfield Road **"similarly situated" comparators**



**5022 W Main Street Car on Jacks for 13 months (2 minutes from Police station)**

**"Similarly situated" comparators**



100) Defendants have not issued any warnings, fines, citations, or tickets to the residents listed above. Discovery shows that the defendants did not ask this resident to move the vehicle until after Plaintiff filed his complaint in September 2023.

101) The below vehicle is in the Plaintiffs' subdivision, and discovery shows no warning, Citations, or tickets were ever issued to this residence.



**6636 W Maple Ct, Monee, Illinois**

**"Similarly situated" comparators"**

102) On July 21, 2023, Plaintiff contacted the Monee Police Department and expressed his continued feeling of being targeted and harassed by the "VOM". Plaintiff wanted the police to see the property directly to Plaintiffs' left and directly to Plaintiffs' right that had campers on the grass for over 2 years and a disabled vehicle for 16 months

**Plaintiff** escorted the "MPD" onto his Estate so that Plaintiff could show the police his neighbor's Campers on the grass and the dismantled vehicle at the house directly to Plaintiff's right and left.

Police Report

"*Officer Crescenti #129 arrived on scene to assist.*

*Thompson stated Michael from Village of Monee Code Enforcement had just left his residence after being there for a complaint of a non-operable vehicle in his driveway. Thompson advised he had lifted his vehicle in his driveway and placed the vehicle on jacks to fix different items on his vehicle. Thompson advised the vehicle had only been on jacks for 48 hours. Thompson then showed a picture of a vehicle that had a damaged front bumper that was currently parked at xxxxxxxxxx in the driveway of the vehicle. Officer Crescenti was able to observe the vehicle parked in the driveway with a damaged front bumper. Thompson stated the vehicle on Winfield Road had been parked non-operable for multiple days."*

*"Thompson then pointed out there was two campers parked in the grass in the backyard of xxxxxxxxxxx* ***I was able to observe two campers that were parked in the grass in the backyard."***

*Exhibits 19*

103) On June 4, 2023, Plaintiffs neighbors that he sold the house (6636 W Maple CT) to date has a disabled vehicle junked for Parts in their grass as of the filing of this amended complaint the picture below was taken June 3, 2024.





The FRAME is cracked on the above vehicle and is being junked for parts based on Plaintiffs 1st hand knowledge and conversations with the *late* vehicle owner (Sollie son).

Plaintiffs neighbor, Roger Sollie testified during his deposition of November 18, 2025;

*"I have never received a warning or ticket from Village of Monee."*

104) The Defendants **"VOM"** (Mayor Therese M. Bogs, Chief of Police, Skott Koerner, and Village Administrator Ruben Bautista apply discretionary decision making based on the color of the Plaintiffs' skin.

105) In every instance, the verbal warnings, the written waning, the tickets, the citations, the fines which "VOM" and "MPD" imposed upon the Plaintiffs were arbitrary applications of the Code designed and allowed by Mayor Therese Boggs and the Village of Monee administrator Ruben Bautista to oppress, intimidate, harass Plaintiff and Plaintiffs family.

**The same rules were not applied to other residents in the Village of Monee.**

106) The Defendant/s Bogs Family illegally used their Political power, Political resources to Racially Target Plaintiff based on his African ethnicity to wit:

A. Defendant/s Bogs Family new that they had control over the Monee Police and the Village Code enforcement Division.

107)The Defendants "**NEIGHBORS"** *(Erwin Bogs, Roberta Bogs, David Lynch, Judith Lynch, and*, Defendants **"VOM"** *(Mayor Therese M. Bogs and her husband Wayne Hasser* Harassed Plaintiff by continuously calling and texting the Police and code enforcement officers on Plaintiff with false allegations.

Defendant/s Mayor Bogs abused her governmental power by making the aforementioned false allegations knowing they possessed the power and control over the Village of Monee Administration to purposefully target Plaintiff without any repercussions.

A. Defendant/s believed there would be no repercussions behind their Constitutional Violations against Plaintiff so the defendants continued recklessly and nonchalantly.

B. The Defendants "**NEIGHBORS**" *(Erwin Bogs, Roberta Bogs, David Lynch, Judith Lynch,* The Defendants **"VOM"** *(Mayor Therese M. Bogs and Wayne Hasser)* The Defendants **"VOM"** (*The Village of Monee an Illinois Municipal Corporation*) The Defendants "**VOM"** *Romulus Biris, Michael Kos, Roxanne Williams)* deceitfully designed a scheme and conspiracy to harass, intimidate, oppress and to financially cripple Plaintiff with the ultimate goal to try and force Plaintiff to relocate from the community.

108) The Defendants **"VOM"** *(Mayor Therese M. Bogs and Wayne Hasser)* The Defendants **"VOM"** (*The Village of Monee an Illinois Municipal Corporation*)Selectively enforced its municipal Code and policies against Plaintiffs based on his racial ethnicity and The Defendants "**NEIGHBORS"** *(Erwin Bogs, Roberta Bogs, David Lynch, Judith Lynch,* racial bias against Plaintiff which is a violation of Plaintiffs constitutional rights.

109) Defendants' submission of data during discovery proves that Plaintiff would receive a warning for an alleged garbage can in 2025, but eighteen residences in Plaintiff's subdivision had the exact same infraction, if not more serious, but never received a warning or Violations, but received no verbal warnings, written warnings, citations, tickets, or fines.

110) In support, the following photograph[3] depict various Village of Monee residences with the same or worse types of purported issues.

111) The Defendants (Erwin Bogs, , David Lynch, Mayor Therese M. Bogs and Wayne Hasser, Romulus Biris, Michael Kos. Chief Scott Koerner Officer Evie Lazzaroni, Officer Jamal Martin, Officer Matthew Ludwig) were at one time and/or still is a Governmental employee of The Village of Monee and that they are trained and very familiar with the constitutional laws on racial discrimination but disregarded the law and The Defendants collectively used its Governmental power in sync with the civilian defendants (who no longer worked for the Village of Monee to violate Plaintiffs rights and try and force Plaintiff to sell his home and relocate.

112) On July 31, 2023**,** Plaintiff issued a FOIA request to defendants VOM and MPDs, and defendant VOM has selectively responded to some of Plaintiff's requests, but others were ignored and/or refused after Plaintiff made four written requests, including notifying the Village attorney in writing of the request.

*Exhibit 20*

A. Discovery has proven that Defendants singled out Plaintiff deliberately for differential treatment with no rational basis. Why pass fifteen (15) homes in Plaintiff's subdivision just to arrive at his home and issue a warning, while the 15 homes have the exact same infraction, if not more?

   The defendant's actions is not rationally related to a legitimate government interest by singling out Plaintiff but ignoring the same infractions from other residence

B. The fact that Defendants (VOM) did not issue any warning or tickets to other neighbors "PROVE" that Defendants conspired and selectively applied and enforced their ordinances against Plaintiff, and it should be noted that the attached exhibits totaling over 100 pages are not exhaustive of the Defendants malignant animosity activity.

113) n August 25, 2023, at 12.49 am The Defendants "NEIGHBORS" *(Erwin Bogs, Roberta Bogs )* called the Monee Police Department complaining about Plaintiff sitting in front of his Pond, The Monee Police department arriving at Plaintiffs home around 1.30am in a black marked Monee Police SUV and the Monee Police SUV shined their spot lights on Plaintiffs home and at Plaintiff.

114) Often, Police escorts are not the typical protocol for serving code enforcements violations.

Throughout the 20 years Plaintiff has resided at his Estate of 6644 W Maple CT Monee, the interaction with the Village of Monee code enforcement and Village of Monee Police department was just ongoing and at many times, a week would not pass without Plaintiffs family, children and friends being harassed and intimidated by VOM and MPD, Plaintiff was always informed by defendants.

*A. "The complaint is anonymous, it's nothing we can do."*

*B. "Your neighbors don't like you why don't you just pack up and go."*

C. *"You know your neighbors are going to run you out of the neighborhood".*

D. *"You have to take this up with the Village of Monee we are just the Police".*

E. *"They will just call the police if you don't comply…"*

F. *"Just try and comply or they will keep writing you tickets*."

G. "We cannot tell you who is complaining even if we wanted to but you already know who they are…"

**CONSPIRACY, CORDINATED STALKING AND HARRASSMENT**

The Plaintiff's residence is less than one mile from leaving the Village of Monee Township. The Monee Police Department and the Village of Monee Township are completely on opposite sides of town. Plaintiff is a retired business owner of 35 years and personally performs all maintenance on his estate, vehicles, and small engines, including lawn care and snow removal. It is important to note that, since Plaintiff is retired, he has no set schedule for when he chooses to exit his home to perform exterior maintenance or repairs. Eight out of ten times when Plaintiff exited his house**,** within 15 minutes**,** the Village code enforcement officers in marked vehicles with the Village of Monee on the door of the vehicle or Monee Police Department in marked vehicles would circle Plaintiff's home in his cul-de-sac.

The Defendants "VOM" and "MPD" do not employee and utilize:

a. Drone surveillance for code enforcement

b. Areil surveillance for code enforcement

c. Video surveillance on Plaintiffs Maple Court Street for Code enforcement

It is very circumstantial.

1. Within 25 minutes of Plaintiff placing his washing machine for disposal and pick up from a scrap metal vendor, the defendants arrive with a warning.
2. Within 15 minutes of the Plaintiff starting landscaping projects on his Estate defendants arrive with alleged code Violations
3. Within 20 minutes of the defendants moving their vehicles on the grass to manage their Estate and assets, the defendants arrive with a warning.

The Defendants "**VOM**" *( Romulus Biris, Michael Kos,* Monee, code enforcement officer also decreased their speed and slowed their car down once arriving in front of Plaintiffs' home, and in some instances would completely stop in front of Plaintiffs' home.

After the Plaintiff filed his federal lawsuit, on October 12, 2023, Defendants Michael Koss, the VOM code enforcement officer, arrived at the Plaintiff's home and parked for 14 minutes, observing the Plaintiff and the Plaintiff's estate while the Plaintiff was outside. working.:


Monee





115) No matter how hard Plaintiff tried to stay under the radar and prevent the Defendants from their targeted campaign to bully, harass, and intimidate Plaintiff, Plaintiffs family and plaintiff's friends, the defendants' actions just continued to grow and get worse.

A. Defendants "VOM" and "MPD" Repeatedly issued Plaintiff warning, tickets, improperly surveilled and patrolled Plaintiff's house.

B. Three of the defendant neighbors (*Erwin Bogs, David Lynch, Wayne Hasser)*

have held and/or currently hold [18]Political office with the Defendant (VOM), which proves their total disregard for Plaintiffs constitutional rights, Defendants believed they were above the law, and nothing would ever stop them from violating Plaintiffs constitutional rights to be free and enjoy their home.

C. The Defendants "**NEIGHBORS"** *(Erwin Bogs, David Lynch, Wayne Hasser )* were VOM Governmental employees with certain training. They understood the general objective of their conspiratorial scheme and welcomed the conspiracey by acting in furtherance of those objectives which Plaintiff has proven with extensive corroborating Police Reports and exhibits.

Even as recent as spring 2023 the conspiracy to deprive Plaintiff of his constitutional right to enjoy his home even included the wives Roberta Boggs and Judith Lynch even though Police reports show Plaintiff had to call on (03/15/23 & 04/25/23) The "MPD" Police twice on defendant Roberta Bogs for continued Harassment.

116) On July 20, 2024, Plaintiff's white Neighbor, Roger Sollie, who lives directly next door to Plaintiff, was able to host an event at his Estate without the required permits for 10 cars or more. Mr. Sollie had over 40 cars on the street. Discovery and Mr. Sollie's testimony confirm he was able to enjoy his Estate and Guest without any complaints from neighbors, Police, or Code enforcement. See exhibits 18.0-18-7.

[18] Wayne Hasser/Village Clerk, Therese Bogs/Mayor, Erwin and Roberta Bogs/Parents of Mayor

In addition, discovery has further proven Plaintiff was singled out deliberately for differential treatment, see email below of July 13, 2018, from defendants.

*Just for information, Kenneth Thompson just came to PD and got 20 parking permits. I inquired as to what kind of party it was and he was extremely vague. Just heads up! Stay Safe! Elise*

*Elise Bednarczyk*

See exhibit 21 Email from "MPD" secretary when plaintiff's son Hosted an Alpha Sorority event with just 11 cars, and defendant's employee, "Elise," emailed the entire Monee Police staff.

117) On July 25, 2024, Plaintiff was issued a warning to remove his camper from the grass. On July 26, 2024, Plaintiff removed his camper from the grass. *Exhibit 22.* Two days later, on July 28, 2024, Plaintiff started another summer project to Black Top his driveway, which all residents are due. Plaintiff relocated the camper closer to his home and placed orange cones in front of his driveway, as all residents do to protect a wet blacktop coating. Defendants' own discovery (Bates # 01287) shows the orange cones in front of the Plaintiff's way. Defendant issued Plaintiff tickets while performing annual asphalt maintenance on his driveway.

**THE DEFENDANT, MAYOR BOGS GETS TO PARK CARS ON THE GRASS**

The village ordinance does not apply to "all," especially Mayor Bogs, her family, friends, and the plaintiff's own neighbors, like Roger Sollie, who gets to Park his guest cars in the mayor's parents' driveway. The picture below shows the defendant, Mayor Theresa Bogs, gets to park her car on the grass while doing her maintenance on her drive, and the

discovery shows the mayor has never been given a warning or ticket for the same Violation as the Plaintiff.





118) Additionally, the defendants' own discovery evidence includes photos of the plaintiff with two tires touching the grass at his residence, for which he has received warnings and tickets. However, the rules do not seem to apply to everyone, and this further demonstrates that in 2024 and 2025, the plaintiff continues to be targeted and singled out intentionally due to the defendants' racial bias against Kenneth Thompson.

Discovery shows again that Mayor Therese Bogs did not receive a ticket for the two tires above being in the grass at her residence.

**CODE ENFORCEMENT INGNORED FIFTEEN HOUSES IN PLAINTIFFS SUBDIVISON** *Exhibits 22 – 22.27*

119) On March 5, 2025, Defendants (VOM) continued targeting the plaintiff with selective code enforcement through invidious discrimination, which was wholly arbitrary. During the period from 2023 to 2025 of this litigation, the defendants even intensified their "harassment campaign," intimidation, targeting, and intentional infliction of emotional stress by patrolling the plaintiff's home more and issuing even more warning tickets and fines Defendants traveled past a total of fourteen houses ALL with more than one garbage can visible, and 26600 Winfield is directly next store to the Mayor Therese Boggs residence and another house is in the same (6633 W Maple CT) cu-de- sac and Plaintiff but discovery shows that on March 5, 2025 none of these residence received a warning, Ticket or fine.

***From:*** *rlondon-williams@villageofmonee.org <rlondon-williams@villageofmonee.org>*
***Sent:*** *Wednesday, March 05, 2025 11:45 AM*
***To:*** *kenthompson@eliteosi.com*
***Subject:*** *Garbage Can*

*Hello Mr. Thompson,*
*This is a friendly reminder to give attention to the following:*
*4-1-7: CONTAINERS AND STORAGE OF GARBAGE AND REFUSE*

*All garbage, rubbish, or recycling containers shall be stored behind a privacy fence or out of view from public areas. (Ord. 1504, 6-24-2009)…..*

*We kindly request that the garbage can to be moved out of the view of the public on or before 3/6/2025 at 8 a.m. Thank you for your cooperation and helping to keep Monee beautiful and desirable community.*

(PLEASE NOTE THE WARNING/COMPLAINT IS FOR ONLY ONE CAN COMPARED TO ALL OTHER RESIDENCE HAVE

TWO OR MORE GARBAGE CANS VISIBLE

120) Please pay attention to defendant's discovery Monee Bates numbers 01292-01293 and the bottom of the time stamp for the defendants pictures they took of Plaintiffs home for the alleged code Violation.

| | | |
|---|---|---|
| **IMG_ 2880** | **03/05/2025 11.28** | **rlonda-williams** |
| **IMG_ 2879** | **03/05/2025 11.28** | **rlonda-williams** |

Plaintiff exhibits 22-22.27 for the fifteen homes that were ignored in his subdivision; these pictures were taken between 1.18pm and 1:24 pm, which is *after* the defendant's pictures were taken. Defendants' employee (rlonda-williams) passed all these homes twice to arrive and depart from the last cul-de- sac in the Gorman Farm Estates.

**26600 Winfield RD** (2nd house to the RIGHT of Defendant Mayor Therese Boggs)

Picture taken March 5, 2025, between 1:18pm to 1:24pm




**26562 Winfield rd,** Picture taken March 5, 2025, between 1:18 pm to 1:24 pm



**26654 Winfield Rd** Picture taken March 5, 2025, between 1:18 pm to 1:24 pm



26541Winfiled Picture taken March 5, 2025, between 1:18pm to 1:24pm



26546 Winfield Rd Picture taken March 5, 2025, between 1:18 pm to 1:24 pm



26432 Gorman Trl Picture taken March 5, 2025, between 1:18pm to 1:24 pm




6633 W Maple CT (Plaintiffs Neighbor and Defendant) Picture taken March 5, 2025



6449 Birch Picture taken March 5, 2025, between 1:18pm to 1:24pm



6441 Birch between 1:18pm to 1:24pm



6442 Birch Picture taken March 5, 2025, between 1:18pm to 1:24pm



6441 Spruce Picture taken March 5, 2025, between 1:18pm to 1:24pm



6532 Cedar Picture taken March 5, 2025, between 1:18pm to 1:24pm



121) In every instance, the warnings and citations which Defendants imposed upon the Plaintiffs were arbitrary applications of the Code designed to target Plaintiff.

122)The same rules were not applied to other residents in VOM.

123) In support, the above photographs depict various Village of Monee residences with the same or worse types of purported code violations.

DEFENDANTS RETALIATION CONTINUES

124) On June 6, 2025, the defendants again continued with their targeted conspiracy campaign to target Plaintiff and Plaintiff family. Plaintiffs' minor child was severely alarmed when she saw several orange stickers taped to Plaintiff front door.




**PLAINTIFFS NEIGHBORS HAD THE SAME ALLEGED VIOLATIONS AND DISCOVERY PROVES THEY NEVER RECEIVED ANY WARNINGS OR CITATIONS**

A. DRYER: PLAINTIFFS DRYER THAT WAS ONLY ON THE CURB FOR 1 HOURS AND 25 MINUTES

Plaintiff timely contracted with a scrap metal vendor via Facebook on June 6, 2025, at 10:15 am. The scrap metal vendor confirmed he would pick up the old dryer by 1:00 pm. Plaintiff had to fulfill a volunteer obligation at Monee Elementary by 12:00 pm on June 6, 2025. Plaintiff placed the dryer at the curb at 11:00 am and left to arrive at Monee Elementary. Defendants' exhibits provided a warning at 11:23 am (Bates number 01297) to Plaintiff. Plaintiff vendor texted at 12:05 pm that he would pick up the dryer in 20 minutes. See *Exhibits 23- 23.2.*

i. Plaintiff's next store neighbor: 6636 W Maple Ct. Roger Sollie:

Roger Sollie testified during his deposition that:

*"My dryer and washer was left out on the street thuresday night, frnday night Saturday night and was not pickeed up until Sunday mourning", "I naver recived a warning or ticket from Village of Monee."*

Mr. Sollie also confirmed the name of his scrap metal vendor to be:

Discovery confirms Roger Sollie has never been issued a warning or ticket for a washer and dryer

ii. 6655 W Maple CT of Erwin and Roberta Bogs:

Placed a large tan metal double-door cabinet out Thursday night on the street, and Friday am morning 9:13 am, the Village waste management vendor refused to remove the cabinet, indicating it was too large. Plaintiff used his dolly late in the afternoon to collect the cabinet and break it down to use the metal. Discovery shows the Bogs family was never issued a warning, ticket or fine for the metal cabinet.

B. PLAINTIFFS SINGLE_GARBAGE CAN AGAIN

Discovery shows Plaintiff neighbors below never received a Warning or fine for the above alleged infractions. Plaintiff will not overexplain by providing additional Pictures of the same subdivision and same neighbors with the exact same alleged violation, but there are a total of 17 homes in Gorman Frams Estates that discovery shows they have not been given a warning or fines for the same alleged infraction.











C. VEHICLE ON GRASS: PLAINTIFFS LANDSCAPING UPGRADE TO HIS ESTATE, RESULTING IN CARS BEING ON THE GRASS

On June 1, 2025, Plaintiff purchased materials totaling $1003.26 from Menards (quantity 24 of 6x6x8 landscaping Timbers) as Phase One of four, which included Plaintiff's 2025 landscaping upgrade to Plaintiff's Volleyball Court, Basketball Court, and Children's Playground. The project included maneuvering the timbers individually, which weighed 95 pounds each, in order to paint each timber blue and install each timber. This Project like any oher projects of this [19]magnitude would take about three to three days. See Exhibit 24



[19] Many of Plaintiffs neighbors are embarking on similar projects that take three (3) days to two (2) months and there will be special vehicles used and special trucks utilized which is normal for Estates of this size.





Many neighbors have contracted with vendors for new pools, new decks, new roofs, new Gardens, new external garages etc., in the Gorman Farm Estates and Discovery shows Plaintiff neighbors never received a warning or fines for the above alleged infractions, for example.

26842 Winfield Road June 17, 2025, (this property is visible from Plaintiff's mailbox)



DISCOVERY SHOWS IN 2025 THE HOMEOWNER OF 26842 Winfield Road NEVER RECEIVED A WARNNING OR TICKET FOR THE ABOVE INFRACTION.



26824 Winfield Road June 16, 2025 (this property is visible from Plaintiffs mailbox)



DISCOVERY SHOWS IN 2025 THE HOMEOWNER OF 26824 Winfield Road NEVER RECEIVED A WARNING OR TICKET FOR THE ABOVE INFRACTION.

6653 BRADFORD CT ON JUNE 3, 2025
(adjacent property to Plaintiff) visible from all sides of Plaintiffs home



DISCOVERY SHOWS IN 2025, 6653 BRADFORD CT NEVER RECEIVED A WARNING OR TICKET FOR THE ABOVE INFRACTION.

125) On June 16, 2025, the defendants, both the Monee Police and the Village of Monee code enforcement, continued to surveil Plaintiff's home.

126) On July 20, 2025, at exactly 9:58 PM, Plaintiff was sitting outside feeding his fish, and the defendants, the Monroe Police Department, in a marked vehicle circled in front of Plaintiff's home very rapidly.

127) On July 22, 2025, at 2 p.m., the Village of Monee code enforcement in a marked car came to a complete stop directly in front of the plaintiff's home and actually stayed in front of the plaintiff's home. The plaintiff's home was parked for three (3) minutes.

## SUMMARY

Pictures tell a thousand stories, the exhibits and pictures attached in the Factual allegation presented by Plaintiff are self-explanatory. The defendants have a total disregard for the United States Constitution that is designed to protect citizens. The defendants have been getting away with this behavior for decades without any repercussions or ramifications, that's why the defendant's behavior is so egregious, extreme and outrageous.

## JURY DEMAND

128) The Plaintiff herby demands a trial by Jury.

**Count I**
**42 U.S.C. § 1983 Equal Protection Class of One**
("THOMPSON" against VOM, MPD)

129) Plaintiffs re-allege all of the preceding paragraphs and incorporate them in this count as if fully restated herein.

130) "VOM" abbreviated below in Count I, means (The Village of Monee an Illinois Municipal Corporation, Mayor Therese M. Bogs, Wayne Hasser, Romulua Biris, Ruben Bautista, Lance Becvar, Michael Koss, Roxanne Williams), "**MPD"** abbreviated below in Count I means; Chief Scott Koerner, Jamal Martin #707, Evie Lazzaroni #714, William Little # 728.

131) The elements for the Equal Protection Class of One count is:

A. Invidious discrimination action that is "wholly arbitrary".
B. The cause of the differential treatment was a 'totally illegitimate animus toward the Plaintiff, Kenneth Thompson, by the defendants.
C. Defendants'' actions were and still are out of sheer malice, vindictiveness.

**INVIDIOUS DISCRIMINATION/ TOTALLY ILLEGITIMATE ANIMUS**

132) The Equal Protection Clause of the Fourteenth Amendment protects individuals from governmental discrimination. To state a class-of-one equal protection claim, an individual must show the allegations of the irrational or malicious application of law enforcement powers. *Esmail v. Macrane,* 53 F.3d 176, 178-80 (7th Circ. 1995) (holding that when "action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort toward the plaintiff for reasons wholly unrelated to any legitimate state objective.) In most class-of-one

cases, the comparison of similarly situated individuals will be used to infer animus. *Sawnson v. City of Chetek*, 718 F.3d 780, 784. (7th Cir. 2013). In *Geinosky*, the court held that when parties raise a serious question whether differences in treatment stem from a discriminatory purpose or form a relevant factual difference, the key evidence is similarly situated; however, if animus is readily obvious, it seems redundant to require that the plaintiff show disparate treatment in a near exact, one-to-one comparison to another individual. Therefore, the question of any class of one case is whether the defendant arbitrarily used the powers given to him by the state to deny equal protection to the plaintiff.

133) For more than twenty years, Defendants consistently responded to repeated, false, or exaggerated complaints made by the Bogs and Lynch families, while ignoring identical or more severe ordinance violations committed by white neighbors. MPD dispatch records show an excessive volume of calls directed solely at Plaintiff's residence, even where no violations existed. This history demonstrates a long-term pattern of selective enforcement uniquely applied to Plaintiff and his family.

134) For more than twenty years, and continuing through at least March 2025, Plaintiffs have been intentionally treated differently by defendants VOM and the MPD than other similarly situated residents, including residents in Plaintiffs' own subdivision of Gorman Farm Estates and throughout the VOM. This disparate treatment includes, but is not limited to the following:

A. The statement-of-facts review shows MPD repeatedly omitted Plaintiff's statements, his reasons for conduct, exculpatory information, and even racial statements made. by Defendant Hasser's attitude toward African-American

women, as shown in police reports, reveals omissions that demonstrate intentional, irrational, and targeted enforcement rather than a neutral application of the law.

B. Plaintiffs are the only residents in the VOM who have received three ordinance tickets in a single day, totaling $5,856.00. Discovery produced on June 13, 2025, (bates number 0001-1159) shows that Plaintiffs' residence has received more than double the number of warnings, citations, tickets, and fines than any other residence in Gorman Farms Estates.

C. On March 5, 2025, a VOM employee emailed Plaintiff a warning about a single garbage can. To deliver that warning, the VOM employee drove past approximately fourteen other homes in Plaintiffs' subdivision twice (once on arrival and once on departure). Discovery shows that each of those fifteen homes had more than one visible garbage can and yet none received any warning or email.

D. MPD's omission of explicit racial statements made during a public safety incident while simultaneously charging or threatening Plaintiff for benign conduct further demonstrates differential treatment based on Plaintiff's African American identity. Nearby white residents engaged in the same conduct without consequence.

E. Discovery shows that MPD employee "Elsie" emailed the entire police department when the plaintiff obtained parking permits for his son's event. *Exhibit 21*. In contrast, Plaintiff's neighbor, directly next door, Roger Sollie,

testified that he frequently hosts events, has never obtained permits, has never been threatened with towing, has never acquired permits for parking, and that none of his guests received a ticket from VOM when throwing large events at his home.

F. Plaintiff is the only resident in Gorman Farms Estates for whom MPD has generated police reports threatening to tow vehicles any time Plaintiff invites a guest to their home.

G. In 2024, while Plaintiff was blacktopping his new driveway (a two-year curing process before sealing), Plaintiff temporarily relocated his RV to the grass just as other neighbors routinely place vehicles on their lawns. Plaintiff received a $50.00 citation for parking on the grass. Discover shows that no other resident in VOM has been cited for temporarily moving a vehicle to the grass while sealing or resurfacing a driveway. In contrast, Mayor Therese Bogs's vehicle is shown on the grass in exhibits while she was sealing her asphalt driveway. *Exhibit 21.1.*

H. Plaintiff received a warning for placing a single washer on the curb for less than three (3) hours while awaiting scrap metal pickup. Neighbor Roger Sollie of 6636 W. Maple Court testified that he put his washer and dryer at the curb overnight from Thursday to Sunday morning; he never received a warning or a ticket.

I. Plaintiff has incurred over $15,000 in tickets and fines from VOM and MPD, a sum exceeding that of any similarly situated homeowners.

J. Neighbors in Plaintiffs subdivision have signed affidavits attesting that they have been able to enjoy their property and host parties with DJs, loud music until 1:

AM without complaints or police involvement, yet when Plaintiff held events at his home, he was arrested for loud music.

K. VOM employee including Wayne Hasser (during tenure as Clerk), Carol Rak, and Daniel Trofimchuk have signed multiple complaints against plaintiff for alleged potential code violations (such as open doors while work was being done inside Plaintiffs' home). MPD officers were used to escorting VOM employees to Plaintiffs residence for these alleged civil code matters, thereby escalating ordinary code enforcement into intimidating and harassing police encounters.

L. In 2023, 2024, and 2025, VOM and MPD have continued to target Plaintiffs by excessively patrolling Plaintiffs' home and issuing repeated warnings, tickets, and fines, including as recently as August 2025. Over the twenty years Plaintiffs have lived in Monee, they have been subjected to extensive verbal warnings in addition to written citations, so numerous that it would take hundreds of pages to list each incident and exhibit.

135) This disparate treatment is part of a deliberate pattern of selective enforcement. VOM and MPD routinely travel approximately 5.2 miles each workday, passing more than 321 homes, including 59 homes within Gorman Farm Estates, without issuing comparable warnings or citations, yet they focus enforcement efforts almost exclusively on Plaintiff's home at the end of the subdivision's last cul-de-sac.

A. For example, neighbor Kyle Toutges moved into his home in September 2021 and kept his RV/camper in the front yard, on the grass, for approximately three years before he sold it. He did not relocate the camper until after Plaintiff filed this

lawsuit on September 18, 2023, at which point Plaintiff identified him as a similarly situated comparator. In his deposition, Kyle testified that he can see Village Hall and the Village LED sign from his front yard, that he has never received a warning or ticket for his camper, and that the camper had been in his front yard since he moved in.

B. As of 2025, VOM and MPD agents have issued Plaintiffs more than 140 verbal warnings, written warnings, tickets, citations, and fines, accusing them of alleged ordinance violations such as cars on the grass, ATVs on the grass, visible garbage cans, unauthorized interior work, campers or RVs on the grass, disabled vehicles, loud music, RV too close to the street, Christmas lights left up, and "nuisance" violations.

C. Discovery has demonstrated that other residents are not cited for comparable or more serious conditions. For example, *exhibits 25–25.3* show a vehicle parked in the grass on a flat tire with no license plates in front of the red-brick building that houses the MPD. MPD officers pass this vehicle daily as they arrive at and leave work, yet discovery shows no warnings, tickets, or fines were ever issued for this vehicle:



Fig. 5401 W Main Street Picture taken November 21, 2025, at 11:16 am

136) Defendant's Pattern of enforcement against Plaintiffs is irrational and malicious

A. Acting through their employees and agents and at the direction of Mayor Therese M. Bogs and Chief Scott Koerner, VOM and MPD intentionally targeted Plaintiffs for unequal treatment. Plaintiffs were and still are being *intentionally treated differently by the defendants "VOM" and "MPD"* from others similarly situated over a twenty-year timeline, even including currently during the year off 2025

B. VOM and MPD, acting under color of state law, had no conceivable legitimate basis for their actions other than spite, personal animus, or other improper motives unrelated to their official duties.

C. VOM and MPD's actions were a deliberate, arbitrary, capricious, and malicious attempt to financially cripple Plaintiffs and to deprive Plaintiffs and their family of the full use and enjoyment of their property under color of law. Defendants did not attempt to issue comparable verbal or written warnings, tickets, citations, or fines to other residents for the same or similar conditions.

D. MPD officers were regularly deployed to participate in what were, at most, alleged civil code-enforcement matters, which is not the regular or proper use of police authority, further evidencing abuse of power.

E. Multiple MPD officers admitted to Plaintiff that they were responding to frequent neighbor complaints about him specifically, stating that particular neighbors "don't like you," and advising Plaintiff to "just go along with it." These admissions confirm purposeful targeting directed by the neighbors and executed by MPD.

F. Plaintiffs were treated unfairly and singled out based on Plaintiff Kenneth Thompson's African-American ethnicity.

137) Plaintiff and his family have repeatedly experienced wrongful acts by VOM and MPD that are far outside the norm for ordinary residents, including but not limited to:

A. Baseless warnings and tickets that are extraordinary and rare for any U.S. citizen, much less a single homeowner in a small village.

B. Daily patrolling and surveillance of Plaintiffs' home.

C. Multiple occasions where Plaintiffs obtained and paid for permits from VOM, signed and approved by VOM employee Biris for a six-month period, yet Biris began issuing tickets roughly sixty days after approval, while Plaintiffs' had a valid permit to build a concrete RV pad.

D. Police interactions triggered by benign, lawful activities inside or around Plaintiffs' property, including painting the interior of their home, burning their own firewood in a fire pit approved by Defendants, and feeding fish in their KOI pond at approximately 1:00 a.m., during which MPD officers shined lights at Plaintiffs' home.

138) The actions of VOM and MPD described in this Count were orchestrated to single Plaintiffs out as a "class of one" for arbitrary, irrational, and discriminatory reasons based on personal animus and racial bias, rather than any legitimate law-enforcement purpose.

139) Plaintiffs were intentionally treated differently from their neighbors, including specific, similarly situated comparators in Gorman Farm Estates and elsewhere in Monee, as detailed above.

140) Defendants knew or should have known that they had no legitimate justification for singling out Plaintiffs based on their official duties as employees of the Village of Monee.

141) Plaintiffs were the victims of intentional discrimination at the hands of Defendants, who were state actors acting under color of law as described in this Complaint.

142) The actions of the Defendants named in this Count lacked any rational basis for treating Plaintiffs differently from other similarly situated residents during the course of Defendants' public duties.

143) As a direct and proximate result of Defendants' actions, Plaintiffs suffered emotional distress, loss of enjoyment of their home, and substantial monetary damages in the form of fines, costs, and related expenses.

144) Mayor Therese Bogs was aware of the discrimination perpetrated by VOM, her husband Wayne Hasser, MPD, and Defendant neighbors, including her parents. She could have prevented the misconduct by instructing MPD and VOM employees, including her relatives, that the Village would not protect or support them if they violated the law or abused their positions. Instead of intervening, Mayor Bogs allowed and encouraged the campaign of harassment, intimidation, and discrimination to continue, including by personally calling VOM code enforcement about Plaintiffs on a near-daily basis.

145) Mayor Bogs failed to intervene to stop the warnings, citations, fines, and stalking by VOM and MPD employees and, by her conduct and acquiescence, promoted and ratified the continued harassment and intimidation of the Thompson family.

146) The actions of Defendants were intentional, willful, and malicious, and taken in reckless disregard of Plaintiffs' rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

147) As a direct, foreseeable, and proximate result of Defendants' unlawful actions, which deprived Plaintiffs of their constitutional rights as described in this Complaint, Plaintiffs

suffered injury and damages, including legal fees and costs, psychological and emotional distress, and economic losses.

148) As a direct and proximate result of the actions of VOM and MPD, Plaintiffs have been deprived of their constitutional right to enjoy their home free from discrimination, free from a campaign of governmental harassment, and free from racial targeting and racial bias.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court enter judgment in their favor and against Defendant "VMP" and "MPD" in an amount to be proved at trial, including for general compensatory, special, consequential damages, for emotional distress and privacy violations, attorneys' fees under 42 U.S.C. § 1983, and for all such other relief to which they are entitled and the Court deems just and proper.

**COUNT II - 42 U.S.C. § 1983**

**FIRST AMENDMENT RETALIATION CLAIM**

(Thompson against VOM, and MPD)

149) Plaintiffs re-allege all of the preceding paragraphs and incorporate them in this count as if fully restated herein.

150) "VOM" abbreviated below in Count II, means (The Village of Monee an Illinois Municipal Corporation, Mayor Therese M. Bogs, Wayne Hasser, Romulus Biris, Ruben Bautista, Lance Becvar, Michael Koss, Roxanne Williams), "MPD" abbreviated below in Count II means; Chief Scott Koerner, Jamal Martin #707, Evie Lazzaroni #714, William Little #728.

151) To state a First Amendment retaliation claim, a plaintiff must allege that "(1) defendant engaged in activity protected by the First Amendment; (2) he suffered a deprivation

that would likely deter Frist Amendment activity in the future; and (3) the First Amendment activity was at least motivated factors in the defendants decision to take the retaliatory action. *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017). Government retaliation tends to chill an individual's exercise of his First Amendment rights. *Massey v. Johnson,* 457 F.3d 711,716 (7th Cir. 2006). When more is alleged here-an entire campaign of harassment which thought trivial in detail may have been substantial in gross. It is a question of fact whether he campaign reached the threshold of actionability under § 1983. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). In *FKFJ*, the court held causation may be proven by circumstantial evidence.

152) Plaintiff engaged in multiple forms of protected First Amendment activity, including: objecting to discriminatory treatment by Village officials and MPD; challenging the Village's ongoing harassment and privacy intrusions; displaying protected expressive material on his camper; criticizing the enforcement practices of the Village; filing complaints and grievances; seeking government intervention; and filing a federal lawsuit to redress unlawful conduct.

153) After Plaintiff engaged in this protected speech, Defendants acting individually and collectively as the Village of Monee and Monee Police Department began and continued a coordinated campaign of retaliatory actions designed to punish Plaintiff for speaking out and to deter him from continuing to exercise his constitutional rights.

154) Defendants issued repeated and baseless ordinance citations against Plaintiff for matters routinely tolerated for white residents throughout the Village, including parking on grass, storing vehicles or trailers, placing garbage cans, the presence of ATVs, and hosting

guests. The same conduct, when committed by neighbors directly across from Village Hall and MPD or at the mayor's residence, resulted in no citations.

155) Plaintiffs' right to speak, write, and publish freely and petition the government is protected under Article 1, Section 4 of the United States Constitution, free from retaliation. (*Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995) (If the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a remedy in federal court).

156) Defendants engaged in daily or near-daily surveillance of Plaintiff's home, including repeatedly driving past his residence, circling the cul-de-sac, and approaching Plaintiff upon his return home to accuse him of alleged "anonymous complaints" that Defendants knew were fabricated or orchestrated by the mayor's family.

157) Shortly after Plaintiff objected to discriminatory enforcement and raised concerns about the Village's ongoing harassment, Defendants removed Plaintiff's minor daughter from his home without legal justification. This act caused severe emotional distress, violated the sanctity of Plaintiff's home, and was intended to intimidate and retaliate against Plaintiff for exercising his rights.

158) Defendants also threatened to tow Plaintiff's vehicles, the vehicles of his family members and guests, and repeatedly approached Plaintiff to issue warnings premised on fabricated or trivial allegations. These actions were not undertaken against similarly situated white residents who engaged in more severe and prolonged violations.

159) Retaliation escalated after Plaintiff filed his federal lawsuit and after he continued objecting to Defendants' practices. This escalation included intensified police presence,

additional fabricated complaints, multiple confrontations, and further selective enforcement, including incidents occurring on or about 03/16/22, 08/22/22, 04/12/23, 04/25/23, 04/28/23, 07/21/23, 08/25/23, 10/12/23, 07/24/24, 06/05/24, 06/06/25, 07/20/25, and 07/22/25. These dates do not reflect the numerous daily instances of surveillance, circling, and intimidation that occurred throughout the relevant period.

160) The timing, pattern, and nature of Defendants' actions demonstrate retaliatory intent. Their conduct began immediately after Plaintiff exercised protected speech, increased after he filed formal complaints, and dramatically escalated after he filed his federal lawsuit, supporting a clear inference that Plaintiff's speech was a motivating factor in Defendants' decision to target him.

161) Defendants' retaliatory campaign was also marked by deviations from normal enforcement practices, including the unprecedented volume of citations issued to Plaintiff; the failure to cite similarly situated white residents; the direct involvement of the mayor, her family, and officials with personal ties to each other; and the use of fabricated complaints to trigger police responses. These procedural irregularities and departures from standard enforcement protocols support the inference of retaliatory motive.

162) The personal involvement of the mayor, her spouse, and her parents who reside across the street from Plaintiff demonstrates that Defendants weaponized official authority to carry out a coordinated and intentional campaign of retaliation. MPD officers acted as an extension of this influence by responding selectively to fabricated complaints and repeatedly targeting Plaintiff's household.

163) As a direct and proximate result of Defendants' retaliatory actions, Plaintiff suffered emotional distress, trauma related to the removal of his minor daughter, financial harm through excessive citations, legal expenses, loss of peaceful enjoyment of his home, reputational injury, and continued fear of government harassment.

164) Defendants' conduct deprived Plaintiff of rights secured by the First Amendment to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court enter judgment in their favor and against Defendant **"VOM"** and **"MPD"** in an amount to be proved at trial, including for general compensatory, special, consequential damages, for emotional distress and privacy violations, if applicable attorneys' fees under 42 U.S.C. § 1988, and for all such other relief to which they are entitled and the Court deems just and proper.

**Count III 42 U.S.C § 1983: Monell Municipal Policy Claim**
**(Thompson Against the Village of Monee)**

165)Plaintiffs re-allege all of the preceding paragraphs and incorporate them in this count as if fully restated herein.

166) "VOM" abbreviated below in Count III, means (The Village of Monee an Illinois Municipal Corporation, Mayor Therese M. Bogs, Romulus Biris, Ruben Bautista, Lance Becvar, Michael Koss, Roxanne Williams), "MPD" abbreviated below in Count III means; Chief Scott Koerner, Jamal Martin #707, Evie Lazzaroni #714, William Little # 728,

167) To state a claim for municipal liability under 42 U.S.C. § 1983, a plaintiff must first plead that he was deprived of a federal right; only then do municipal fault, deliberate indifference, and causation come into play. *Schor v. City of Chicago*, 576 F.3d 775, 779 (7th

Cir. 2009); First Midwest Bank ex rel. *LaPorta v. City of Chicago*, 988 F.3d 978, 986–87 (7th Cir. 2021) A municipality is not liable under § 1983 on a theory of respondeat superior; rather, a plaintiff must show that the constitutional injury was caused by "(1) an express policy; (2) a widespread practice that is so permanent and well settled as to constitute a custom; or (3) the act of a person with final policymaking authority." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019). A practice may qualify as a municipal custom when the facts "permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017); see also *Flores v. City of S. Bend*, 997 F.3d 725, 733 (7th Cir. 2021). Finally, the plaintiff must plausibly allege that the municipal policy, custom, or decision by a final policymaker was the "moving force" behind the constitutional violation, meaning there is a direct causal link between the challenged municipal action and the deprivation of federal rights. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997); *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002); *Cozzi v. Vill. of Melrose Park*, 592 F. Supp. 3d 701, 707–08 (N.D. Ill. 2022).

168) At all times material to this Complaint, VOM maintained an unwritten policy, practice, and custom sanctioned by Mayor Therese Bogs and Chief of Police Scott Koerner that knowingly allowed and encouraged the actions described below, which violated Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution.

## I. VOM's Widespread, Longstanding Custom of Racially Motivated Harassment

### A. Repeated Protection of Wayne Hasser's Assaultive Conduct

169) Defendant Wayne Hasser, the prior Village Clerk and husband of Mayor Therese Bogs, repeatedly engaged in dangerous and assaultive conduct toward African-Americans, with full knowledge and protection from VOM's final policymakers:

A. In July 2017, Mayor Therese Bogs and Chief Scott Koerner were aware that Hasser attempted to run Plaintiff off the road with his vehicle on Winfield Road near 26811 Winfield Road, as reflected in Plaintiff's 911 call reporting that incident. Despite that report, Chief Koerner has refused to provide Plaintiff with a copy of the police report to date, and no corrective action was taken against Hasser.

B. On July 2, 2019, Mayor Bogs and Chief Koerner were aware that Hasser used his lawn tractor to successfully run an African-American woman off the road. Again, no meaningful action was taken to protect the Black woman's constitutional rights.

C. On September 6, 2024, a three-page employee/citizen complaint was hand-delivered to Chief Koerner against Hasser for assaulting another Black woman, with Mayor Bogs physically present during the incident. The complaint describes Hasser directing vulgar insults and brandishing his FOID card toward the Black complainant, stating "*This one right here is for her," and calling her a "piece of sh*t"* multiple times.

> *"…He then said, "You piece of sh*t (expletive)." Mayor Bogs said, "Wayne, just show her your I.D." Clearly more upset, he said, "Oh you too!" (threw down the rolled up papers and magazines or so in his hands onto the table in front of me and pulled out his wallet. Mayor Bogs attempted to reach for his*

> *wallet to assist and he pulled back away from her yelling "NO!" He then proceeded to go through his stack of cards in his hands one by one and staring at me after each one. I saw that he passed his I.D. and I knew then where he was going with this. He then stops and slowly begins to turn his hand towards me in slow motion until it gets my direction. I saw it was his FOID card. Mayor Bogs hit his arm saying, "Wayne, show her your regular I.D." He replied, "No, this is the one I want her to see. This one right here is for her." I said, "It's okay, I was able to verify your date of birth from it, thanks." He then once again said, "You piece of sh*t (expletive). That one if for you, you piece of sh*t (expletive)." By the third "you piece of sh*t,"…*

*See Exhibit 8.*

D. To date, no action has been taken against Hasser for this incident, which constitutes at least the third documented complaint by African-American victims, two of them Black women about his assaultive behavior.

170) VOM, Mayor Bogs, and Chief Koerner maintained a permanent and well-settled custom of protecting Hasser's unconstitutional behavior. They enforced this unwritten policy by failing to investigate, discipline, or otherwise restrain Hasser after repeated complaints, thereby ratifying his conduct and causing ongoing constitutional violations and injuries to African-American victims, including Plaintiff.

171) Mayor Bogs and Chief Koerner are the final decision-makers for the Village of Monee and were fully aware of Hasser's violations of the Fourteenth Amendment. Acting on behalf of VOM, they unanimously chose to "turn a blind eye," thereby embedding tolerance of racially motivated assaults into municipal practice.

**II. Village of Monee's Racial Animus Toward African-Americans**

172) Hasser has publicly expressed racial animus on social media. As prior Village Clerk and the mayor's husband, he posted derogatory Facebook content about African-American public figures, including Vice President Kamala Harris, the Obama family, and Venus and Serena Williams. *Exhibits 26.1-26.15.*

173) On matters of public celebration, VOM selectively supports non-Black community events while ignoring African-American cultural events. For example, in 2025, Mayor Therese Bogs the chief executive and public face of the Village, who regularly attends other Village-hosted functions did not attend the Village's Juneteenth celebration, despite attending virtually every other major Village event.




Today was a powerful celebration of Juneteenth here in Monee — a time to reflect on freedom, unity, and the progress still to be made. While we're incredibly grateful for the love and support shown by so many in our community, I couldn't help but notice the absence of our mayor.

This year, I've seen her present at nearly every community event — yet on a day that holds deep historical and cultural significance for African American residents, she was nowhere to be found. That absence didn't go unnoticed, and while I don't know the reason, I do know that presence matters. Representation matters. Inclusion matters.

This isn't about politics — it's about people. It's about showing up when it counts.

To our community: let's continue to support, uplift, and celebrate each other — not just on Juneteenth, but every day.

#Juneteenth #MoneeStrong #PresenceMatters #CommunityVoice

2

**III. Deliberate Indifference and Selective Code Enforcement Against Plaintiffs**

174) VOM, Mayor Bogs, Chief Koerner, code-enforcement officers, and MPD officers acted with improper animus and deliberate indifference by taking adverse actions against Plaintiffs, including repeated verbal warnings, written warnings, excessive fines, parking tickets, continuous patrolling of Plaintiffs' home, and placing an administrative lien on Plaintiffs' real property.

175) As part of this unwritten custom, Defendants:

A. Allowed and encouraged code-enforcement and police officers to issue bogus citations and tickets for petty or non-existent reasons, without exigent circumstances to justify such enforcement; and failed to provide adequate training on when enforcement is appropriate.

B. Traveled approximately 4.1 miles, an eleven-minute drive to Plaintiffs' home, located at the last cul-de-sac in Gorman Farms, specifically to issue warnings, tickets, and fines, while refusing to observe or cite other residents with the exact same alleged infractions along the route.

C. Ignored similarly situated comparators, including:

   i. Oral testimony from Plaintiff's neighbor, Roger Sollie, 6636 W. Maple Ct., (directly to the plaintiff's right), who kept a trailer on his front lawn for approximately three years without receiving warnings, tickets, or fines, until after Plaintiff filed this lawsuit. *Exhibit 18.11.*

   ii. Neighbor Tamika Lawson, 26815 Winfield Rd., (directly to the plaintiff's left), had a disabled vehicle but did not receive warnings or tickets until after the Plaintiff filed this lawsuit.

   iii. Kyle Smith, 5203 W. Court Street, who lives directly across from Village Hall and kept his camper in his front lawn about ten feet from the street for approximately three years; he received no warning, ticket, or fine until Plaintiff filed this lawsuit.

   iv. David Lynch, 6633 W Maple Court neighbor in plaintiffs cul-de-sac has a visible garbage can present on March 5, 2025, at 1:17 pm, and was not

issued any warning or fines, yet the Plaintiff was issued a warning for the same issue. *Exhibit 22.10*.

v. More than thirty-five similarly situated comparators identified by Plaintiff who had not been cited until Plaintiff named them in his original and first amended complaints, after which Defendants belatedly issued citations as a form of "subsequent remedial" damage control, while comparators not mentioned in the complaint still have ongoing code violations as of December 8, 2025.

176) VOM was placed on both actual and constructive notice of these constitutional violations multiple times, including during the pendency of this litigation, yet continued surveilling Plaintiffs' home and issuing warnings, citations, and fines. Plaintiffs' neighbors were allowed to enjoy and repair their properties, hire vendors, and upgrade their homes without interference, while Plaintiffs faced immediate enforcement activity whenever they attempted similar work, including as recently as August 2025.

**IV. Lack of Policy and Training to Prevent Racial Harassment and Selective Enforcement**

177) Defendants' journey to Plaintiffs' home 4.1 miles in approximately eleven minutes to issue warnings, tickets, or fines was undertaken without any municipal policy or training requiring officers to recognize or prevent racially motivated harassment or selective code enforcement based on ethnicity.

178) VOM and MPD lacked any written policy, training manual, or procedure to educate and manage employees in the following areas:

A. Identifying and taking corrective action against anonymous callers who use law enforcement and code enforcement as tools to harass neighbors for racial reasons.

B. Preventing VOM employees from making persistent, unfounded complaints to third parties about the same resident.

C. Prohibiting daily surveillance of a specific resident's home for the purpose of oppression, intimidation, and harassment.

D. Prohibiting the abuse of power by issuing three sequentially numbered tickets in a single day to the same resident totaling $5,856.00.

E. Preventing personal attacks and insults, in writing and verbally, against a specific resident by Village employees; and

F. Prohibiting officials from turning a blind eye to obvious racial profiling and harassment directed at a single resident.

**V. Final Policymaker Authority of Mayor Therese Bogs and Related Officials**

179) Defendant Mayor Therese Bogs, possess final policymaking authority for VOM with respect to code enforcement, policing, and the treatment of residents:

A. For all Board meetings in 2023, 2024, and 2025, Mayor Bogs calls each meeting to order and presides over regular meetings of the Board of Trustees.

B. It is a fact, Mayor Bogs's signature is required on the last page of all Board meeting minutes.

C. Mayor Bogs regularly provides a "Mayor's Report" at bi-monthly Board meetings and introduces motions that are routinely approved without veto. For example, the October 9, 2024, minutes show the Board unanimously approving two resolutions for grant applications after motions initiated under the Mayor's report.

> <u>Minutes of October 9, 2024, 6:30 pm</u>
>
> G. Mayors Report
> *Discussion/Approval Re: !TEP-Resolution-Grant Application for Pedestrian Improvements Along Will Center Rd. & Linden Ave. - Motion was made to improve. Trustee Henson Moved, Trustee Rakis Seconded ... Roll Call Vote Ayes: Trustees Horne, Rakis, Wilson, Youdris, Gonzalez, Henson {6)* ***Nays: NONE (0)*** *Motion Carried Res. #2024-4*
> *. Discussion/ Approval Re: !TEP-Resolution-Grant Application for Streetscape-Beautification Improvements Along Main Street from Oak Rd. to Linden Ave. - Motion was made to approve. Trustee Henson Moved, Trustee Youdris*
> *Seconded ... Roll Call Vote Ayes: Trustees Rakis, Wilson, Youdris, Gonzalez, Henson, Horne (6)* ***Nays: NONE (0)*** *Motion Carried Res. #2024-5*

D. Mayor Bogs is required to sign off on major financial decisions for VOM, including plats of dedication and public-utility approvals, as reflected in the January 22, 2025, Board minutes.

> Minutes of January 22, 2025 6.30pm page 7
> *7. Approval for the Mayor & Clerk to sign the Plat of Dedication for Public Streets & Public Utilities for Properties Located on Bruns Rd. (PIN# 21-14-20-306-001-0000 & 21-14-20-306-002-0000)-Motion was made to approve. Trustee Horne Moved, Trustee Youdris Seconded ... Roll Call Vote Ayes: Trustees Wilson. Youdris, Gonzalez, Horne, Rakis (5) Nays: NONE (0) Motion Carried*
> *8. Approval for the Mayor & Clerk to sign a Plat of Dedication For Property Located on Ridgeland Ave. (PIN# 12-14-20-300-023-000)-Motion was made to approve. Trustee Youdris Moved, Trustee Ral<is Seconded ... Roll Call Vote Ayes: Trustees*

*Youdris, Gonzalez, Horne, Rakis, Wilson (5) Nays: NONE (0) Motion Carried*

E. It is a fact that Mayor Bogs has complete authority over all department hiring decisions. For example, she re-appointed all the VOM officers for another term after their previous term ended.

180) It is a fact that Defendant's insurer, CCMSI, asked Mayor Bogs which law firm would handle the Thompson v. Monee case. In response, Mayor Therese Bogs hired the current law firm for this litigation.

181) Defendants Mayor Bogs holds considerable power in the Village and served as final policymakers and presidents of the Village. They were fully aware of the actions of Mayor Bogs's parents (Erwin and Roberta Bogs) and husband (Wayne Hasser), including their repeated calls to code enforcement and MPD to target Plaintiffs. On numerous occasions, Mayor Bogs and Hasser personally contacted MPD and VOM code enforcement to harass, intimidate, and direct officers to issue warnings, citations, and tickets to Plaintiffs.

182) VOM and MPD officers frequently stopped first at the home of Mayor Bogs and Hasser before traveling to Plaintiffs' residence to carry out acts of harassment, intimidation, threats, and fines, evidencing coordination and direction from final policymakers.

183) As final policymakers, Bogs wielded power on behalf of VOM and used it to impose and maintain a policy and practice of punishing the Thompson family at the behest of the Bogs family (Erwin and Roberta), who live directly across the street from Plaintiffs.

184) The Village Board has never rejected Mayor Bogs's legislative proposals and routinely "rubberstamps" her recommendations, confirming that her decisions and practices represent official policy of VOM.

**VI. Failure to Train, Supervise, and Discipline; Municipal Fault and Causation**

185) Defendant Village of Monee is responsible for the creation and adoption of rules and regulations governing the Village, including the training and supervision of its police officers, clerks, trustees, and mayor regarding the lawful use of government power.

186) VOM has a grossly inadequate system for training and supervising its clerks, trustees, mayor, and police officers regarding equal protection, racial discrimination, and the limitations on using code-enforcement and police powers to target individual residents.

187) The unconstitutional actions of VOM and MPD officers described above were carried out pursuant to VOM's policy and practice of failing to train, supervise, or discipline its staff adequately, and of allowing high-level officials to act outside the law without fear of discipline or investigation. This failure amounts to deliberate indifference on the part of VOM and its leading officials.

188) The unconstitutional actions of Wayne Hasser and Bogs constitute direct municipal action. Their conduct was undertaken pursuant to VOM's policy and practice of permitting clerks, trustees, and the mayor to abuse their offices without meaningful oversight or consequences.

189) Multiple MPD officers have verbally acknowledged to Plaintiff that they are aware of neighbors' daily calls and complaints about Plaintiffs' residence, but they "must follow the Chief and Mayor's instructions," confirming that the harassment is driven by municipal policy and direction rather than isolated rogue conduct.

190) At all times relevant, Defendants VOM, MPD, Hasser, and Bogs were acting under color of law and pursuant to policies, customs, and practices of the Village of Monee, Illinois.

191) The Village of Monee's failure to properly train, discipline, monitor, control, and supervise its police officers, trustees, clerks, and mayor was the direct and proximate cause of the injuries to Plaintiffs, including the campaign of harassment, threats, intimidation, verbal and written warnings, tickets, fines, and deprivation of the full use and enjoyment of their home.

192) As a direct and proximate result of these municipal policies, customs, and decisions by final policymakers, Plaintiffs suffered the constitutional injuries alleged in this Complaint, including violations of their Equal Protection rights, substantial emotional distress, legal fees and costs, economic losses, and loss of enjoyment of their home.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court enter judgment in their favor and against Defendant VOM in an amount to be proved at trial, including for general compensatory, special, consequential damages, for emotional distress and privacy violations, if applicable attorneys' fees under 42 U.S.C. § 1988, and for all such other relief to which they are entitled and the Court deems just and proper.

**Count IV**

42 U. S. C. 1983 Federal and State Conspiracy
("THOMPSON" Against VOM & MPD)

193) Plaintiffs re-allege all the preceding paragraphs and incorporate them in this count.

194) The Village of Monee, "**VOM"** abbreviated below in Count IV, means (The Village of Monee an Illinois Municipal Corporation, Mayor Therese M. Bogs, Wayne Hasser, Romulus Biris, Ruben Bautista, Lance Becvar, Michael Koss, Roxanne Williams), The Monee Police Department, "**MPD"** abbreviated below in Count IV means; Chief Scott Koerner, Jamal Martin #707, Evie Lazzaroni #714William Little # 728 "**NEIGHBORS"** abbreviated below in Count VI means Erwin Boggs. Roberta Boggs, David Lynch, Judith Lynch,

195) To state a conspiracy, claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) a state actor and one or more private individuals reached an understanding to deprive the plaintiff of constitutional rights, and (2) the private individuals were willful participants in joint activity with the state. *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 152 (1970); *Fries v. Helsper,* 146 F.3d 452, 457 (7th Cir. 1998). A private citizen acts "under color of state law" when facts show a concerted effort or coordinated course of action between the private party and government officials. Id.

196) A conspiracy may be established by circumstantial evidence, but the complaint must allege facts that plausibly support a "meeting of the minds," including the who, what, when, why, and how of the unlawful agreement. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1014–17 (7th Cir. 2000). Bare assertions or conclusory labels are insufficient. *Cooney v. Rossiter*, 583 F.3d 967, 971–72 (7th Cir. 2009). A conspiracy is plausible where the collective facts

reasonably support an inference that state officials and private individuals shared a common objective here, the targeted deprivation of Plaintiffs' Fourteenth Amendment rights.

197) For more than twenty years, Wayne Hasser, Erwin and Roberta Bogs, and David and Judith Lynch repeatedly and unfoundedly filed complaints with MPD and VOM code enforcement, which always resulted in immediate enforcement actions against Plaintiff, even when no ordinance violations existed. These repeated sequences of complaint, officer response, citation, or harassment establish a coordinated understanding to target Plaintiff.

198) MPD officers repeatedly informed Plaintiff that they were responding to neighbor complaints from the Bogs and Lynch families, explicitly stating that "your neighbors don't like you" and that enforcement actions would continue regardless of whether a violation existed. These admissions demonstrate that officers knew they were acting at the direction of the private defendants.

199) After receiving calls from the Bogs and Lynch families, MPD routinely initiated warnings, citations, late-night visits, and surveillance of Plaintiff's home, even when white neighbors with identical or more serious ordinance violations received no scrutiny.

200) The private defendants and VOM/MPD officials thus acted jointly, with a shared objective: to harass, punish, and drive Plaintiffs out of their home through selective enforcement, intimidation, and deprivation of constitutional rights.

201) Defendant Wayne Hasser, during his tenure as Village Clerk, and husband of Mayor Bogs, regularly used his position and influence to direct MPD officers and code enforcement to Plaintiff's home for the purpose of issuing warnings, tickets, and fines, regardless of whether a

violation existed. Even after leaving his position as Village clerk, Hasser continued to influence VOM and MPD.

202) On multiple occasions, MPD officers omitted exculpatory facts, omitted racial statements by Defendant Hasser, and concealed Plaintiff's statements in police reports, demonstrating coordinated efforts to protect Hasser and further the conspiracy.

203) MPD and VOM officials consistently ignored comparable or more severe ordinance violations committed by white residents, including RVs in front yards, cars on grass, trash cans left in view, disabled vehicles, construction debris, and loud music, while aggressively enforcing ordinances solely against Plaintiffs.

204)The uniform pattern of enforcement following neighbor complaints with political influence, combined with total non-enforcement against white residents, demonstrates a concerted, not accidental, course of conduct between private and state defendants.

205) **Continuing Tort** – The ongoing conspiracy dates back to 2006, but can be substantiated as far back as 2013, when current Village of Monee employee Daniel Trofimchuk III filed a complaint with MPD against the Plaintiff, labeled as "other public complaint." On June 14, 2013, at 2:40 pm, Tofimchuk III, acting as a "community member" who lives 6.4 miles from the plaintiff, reported concerns regarding the plaintiff's property. Consequently, Officer Drumm and Bosse were dispatched to the plaintiff's house because Trofimchuk III conspired with all defendants to violate constitutional rights. As a result, Officer Drumm and Bosse determined this was a civil matter after communicating with the plaintiff. *Exhibit 26.16.*

206) Defendants committed multiple overt acts in furtherance of their conspiracy, including:

A. Issuing more than 140 warnings, citations, and fines against Plaintiffs while issuing none to similarly situated white neighbors;

B. Repeated daily surveillance of Plaintiffs' home by MPD patrol units;

C. Repeated police visits triggered solely by calls from the Bogs, Lynch families, and Village employees;

D. Omission of racial statements and exculpatory facts from police reports;

E. MPD and VOM continuing enforcement activity even after courts or permits authorized Plaintiffs' conduct;

F. threats of arrest and baseless police confrontations;

G. The issuance of sequentially numbered tickets demonstrating that Plaintiffs were the only residents receiving citations during certain time periods.

207) These overt acts demonstrate coordinated participation between private and state defendants to deprive Plaintiffs of equal protection and other constitutional rights.

208) After Plaintiff filed a prior federal lawsuit against VOM and MPD (Case No. 12-CV-05020), Defendants escalated their campaign of harassment, increased ticketing frequency, and increased surveillance of Plaintiff's home. This escalation further demonstrates agreement, motive, and coordinated retaliatory intent.

209) Through the coordinated scheme described above, Defendants, both private and governmental, acted jointly under color of state law and deprived Plaintiffs of their Fourteenth Amendment rights to equal protection and due process, including freedom from arbitrary, malicious, and discriminatory enforcement of municipal laws.

210) The collective conduct of private and state defendants was the direct, foreseeable, and proximate cause of Plaintiffs' constitutional injuries, emotional distress, financial losses, and loss of enjoyment of their home.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court enter judgment in their favor and against "ALL" in an amount to be proved at trial, including for punitive damages, general compensatory, special, consequential damages, for emotional distress and privacy violations, if applicable attorneys' fees under 42 U.S.C. § 1988, and for all such other relief to which they are entitled and the Court deems just and proper.

**Count V**
42 U. S. C. 1985 (3) Conspiracy
(Thompson against NEIGHBORS)

211)Plaintiffs re-allege all of the preceding paragraphs and incorporate them in this count.

212) The Village of Monee, "**VOM"** abbreviated below in Count V, means (The Village of Monee an Illinois Municipal Corporation, Mayor Therese M. Bogs, Wayne Hasser, Romulus Biris, Ruben Bautista, Lance Becvar, Michael Koss, Roxanne Williams), The Monee Police Department, "**MPD"** abbreviated below in Count V means; Chief Scott Koerner, Anthony Lazzaroni Deputy Chief #703, Jamal Martin #707, William Little #728, Evie Lazzaroni #714, "**NEIGHBORS"** abbreviated below in Count V means Erwin Boggs. Roberta Boggs, David Lynch, Judith Lynch,

213) Under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) motivated by a racial or class-based, invidiously discriminatory animus; (3)

an act in furtherance of the conspiracy; and (4) a resulting injury or deprivation of a constitutional right. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). The statute applies where private individuals and state actors join together in a coordinated effort to deprive a protected class of equal protection under the law. A § 1985(3) claim may be proven through circumstantial evidence demonstrating a shared understanding, coordinated intent, and overt acts taken to accomplish the unlawful objective.

214) A conspiracy may be inferred from the relationship of the parties, their communications, repeated joint action, and conduct that would not reasonably occur absent coordinated agreement. *Brokaw v. Mercer Cnty.,* 235 F.3d 1000, 1014–17 (7th Cir. 2000). Direct proof is not required; the conspiracy may be shown through facts collectively supporting a plausible inference of a meeting of the minds. In Brokaw, the court found it is reasonable to infer that to be able to pull off defendants plan to have a minor removed from home they had a relative in a position of governmental authority. *Brokaw* 235 F.3d 1000 at 1017.

**A. Existence of The Conspiracy**

215) Private Defendants Erwin Bogs, Roberta Bogs, David Lynch, Judith Lynch, and Wayne Hasser ("Neighbors") conspired with state and municipal officials including Mayor Therese Bogs, Wayne Hasser, employees of the Village of Monee Code Enforcement Department, and officers of the MPD to deprive Plaintiffs of equal protection of the laws, free enjoyment of their property, and constitutional rights secured by the Fourteenth Amendment.

216) From at least 2006 through 2025, these private and government defendants communicated in person, by phone, by text, by email, and through two-way police radio,

coordinating discriminatory actions designed to intimidate, harass, target, and punish Plaintiffs because Plaintiff Kenneth Thompson is African American.

217) As part of the agreement, Defendants adopted the shared objective:

> "*We will force Kenny to move from the village of Monee by any means necessary*."

This objective was carried out through intimidation, harassment, threats, excessive fines, unannounced entries onto property, daily surveillance, manipulation of code enforcement powers, and the misuse of police authority.

**B. Specific and Implicit Agreements, and Joint Coordination**

218) The Neighbors repeatedly contacted Village officials and MPD officers to demand that warnings, citations, and fines be issued to Plaintiff for ordinary and lawful activities, including painting the interior of his home, burning firewood in an approved fire pit, feeding fish at night, parking vehicles temporarily on grass while maintaining his driveway, and conducting routine landscaping and maintenance.

219) MPD and Village officials acted on these communications, appearing at Plaintiff's home within minutes of Plaintiff exiting his residence—conduct that cannot be explained by routine patrol practices and demonstrates coordinated communication between neighbors and state actors.

220) MPD officers completed police reports identifying "anonymous callers," but evidence shows that many of these "anonymous" complainants were Village employees (Daniel Trofimchuk III, and Carol Rak), officials, or individuals living directly across the street, further evidencing concealment of coordinated racial targeting.

221) MPD officers actively participated in the conspiracy by issuing false or baseless warnings and citations, threatening arrest, escorting Village employees onto Plaintiff's property without lawful basis, and repeatedly surveilling Plaintiff's home despite no legal cause.

222) Private Defendants pressured MPD and Code Enforcement to take punitive action against Plaintiff, including drafting exaggerated or false complaints to justify heightened police presence and create a paper trail portraying Plaintiff as problematic.

**C. Racial and Class-Based, Invidious Discriminatory Animus**

223) Plaintiffs are African American. At the time Plaintiff purchased his home in 2005, African Americans comprised less than 2.12% of the Village population. The Defendants' coordinated conduct reflects a purpose to exclude African American families from the community.

224) MPD Officer Blake told Plaintiff:

> *"You know your neighbors don't like you—why don't you move?"*

225) MPD Officer Drumm told Plaintiff:

> *"We get daily calls on your house, but I know what it is,"*
>
> Officer Drumm: then rubbed the back of his hand with his other hand an unmistakable racial gesture.

226) Wayne Hasser published Facebook posts containing derogatory statements and images about African Americans, including disparaging posts about President Obama, Venus and Serena Williams, Tiger Woods, and Michael Jordan, demonstrating racial hostility consistent with the conspiracy's purpose. *Exhibit 26.1-26.15*.

227) These statements and actions establish the racial motive required under § 1985(3).

**D. Overt Acts in Furtherance of The Conspiracy**

228) Defendants engaged in the following over acts, including but not limited to:

A. Issuing over 127 warnings, citations, and fines against Plaintiff's home—more than any resident in the Village of Monee.

B. Imposing over $15,000 in administrative fines and liens on Plaintiff's properties.

C. MPD's daily patrols and surveillance of Plaintiff's home, often arriving within 15 minutes of Plaintiff stepping outside.

D. Arresting Plaintiff and Plaintiff's guests for minor or fabricated violations, including "loud music."

E. Issuing RV citations despite Plaintiff's possession of valid Village-approved permits.

F. Misusing municipal authority to interfere with Plaintiff's normal home activities, including painting, landscaping, and family gatherings.

G. Coordinated harassment on significant dates including on June 6, 2024, when Village Code Enforcement arrived 14 minutes after Plaintiff opened his garage door, followed hours later by MPD arriving 15 minutes after Plaintiff stepped outside to water plants.

This figure/photo below illustrates the defendant's surveillance on June 6, 2024.


ELITE, INC.
A Technology Compa
(708) 503-0078




The figure/photo below shows the date and time as June 6, 2024, at 6:01 pm



**E. Injury to Plaintiffs**

229) As a direct and proximate result of Defendants' racial conspiracy, Plaintiffs suffered:

A. Severe emotional distress.

B. Financial damages from excessive fines, liens, and legal expenses.

C. Loss of enjoyment of their home for over 20 years.

D. Reputational harm.

E. Fear and intimidation preventing family gatherings, including cancellation of 24 years of Thanksgiving events.

F. Confusion and fear among Plaintiffs' children because of daily police presence.

G. Diminished property use due to MPD harassment and surveillance.

**F. Damages**

230) Plaintiffs have sustained compensatory damages, including emotional distress, property damage, financial losses, legal fees, and loss of constitutional rights, and seek all relief permitted under 42 U.S.C. § 1985(3), including punitive damages for Defendants' malicious and racially motivated acts.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court enter judgment in their favor and against "ALL" in an amount to be proved at trial, including for punitive damages, general compensatory, special, consequential damages, for emotional distress and privacy violations, if applicable attorneys' fees under 42 U.S.C. § 1988, and for all such other relief to which they are entitled and the Court deems just and proper.

**Count VI**

42 USC § 1983 Fourth Amendment

REMOVAL AND SEZIURE OF MINOR CHILD

("KRT" against VOM and MPD)

231) Plaintiffs re-allege all of the preceding paragraphs and incorporates them in this count as if fully restated herein.

232) "VOM" abbreviated below in Count VI, means (The Village of Monee an Illinois Municipal Corporation, Mayor Therese M. Bogs, Wayne Hasser, Romulua Biris, Ruben Bautista, Lance Becvar, Michael Koss, Roxanne Williams), "MPD" abbreviated below in Count VI means; Chief Scott Koerner, Anthony Lazzaroni Deputy Chief #703, Jamal Martin #707, Evie Lazzaroni #714, William Little # 728,

233) The Fourth Amendment applies to the seizure of children by government officials, and removing a child from a parent's custody constitutes a "seizure" that must be supported by a court order, a warrant, or true exigent circumstances. *Doe v. Heck*, 327 F.3d 492, 509–10 (7th Cir. 2003) ("the temporary removal of a child from his home and family… constitutes a seizure within the meaning of the Fourth Amendment").

234) Government officials, including police, violate the Fourth Amendment when they remove a child without: (1) a court order, (2) probable cause, or (3) exigent circumstances involving immediate danger of serious harm. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1010–11 (7th Cir. 2000) (seizure unconstitutional where removal occurred without warrant and without reason to believe child was in imminent danger).

235) Exigent circumstances exist only where the officers have specific, articulable evidence that a child is in imminent danger of abuse or serious bodily harm. General concerns, unverified reports, custody disputes, or mere allegations do not justify seizure. *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000) (widely cited in Seventh Circuit child-seizure jurisprudence) (no exigency without evidence of immediate threat); *Hernandez v. Foster*, 657 F.3d 463, 473–75 (7th Cir. 2011).

236) The Seventh Circuit also holds that officials must conduct reasonable investigation before removing a child, and failure to investigate renders the seizure unconstitutional. *Heck*, 327 F.3d at 520–21(social worker and police violated Fourth Amendment where they seized child based on uncorroborated statements and without court authorization).

237) Arresting or threatening to arrest a parent to coerce relinquishment of custody is an unconstitutional seizure achieved "by show of authority." *Carlson v. Bukovic*, 621 F.3d 610, at

617–18 (7th Cir. 2010) (police violate Fourth Amendment where child removal is compelled by threats of arrest absent warrant or court order).

### A. Seizure of KRT Without Court Order, Probable Cause, or Exigent Circumstances

238) KRT, a minor child, lived with her father Plaintiff Kenneth Thompson continuously since age two, attended Monee Elementary for four years, and was safely residing in her established home and school district at all relevant times.

239) Despite having no court order, no DCFS investigation, no allegations of abuse or neglect, and no evidence suggesting imminent danger to KRT, Defendants MPD agreed to forcibly remove the child from Plaintiff's custody based solely on the mother's complaints relating to financial disagreements.

240) The police reports contained no allegations of harm, danger, neglect, or abuse toward KRT facts which, under *Heck*, *Brokaw*, and *Hernandez*, make removal unlawful.

241) MPD lacked any reasonable belief that KRT faced imminent harm, as required to justify a warrantless child seizure under the Fourth Amendment.

### B. Coercive Threats and Show of Authority

242) MPD informed Plaintiff's attorney, Tim Tyler:

*"We will arrest Ken if he does not turn over the child."*

This threat constituted an unconstitutional show of authority and coercive seizure, prohibited under *Bukovic*, where police compel relinquishment of a child by threatening arrest without legal justification.

243) Under Seventh Circuit, threatening custodial arrest to force surrender of a child is itself a Fourth Amendment violation.

**C. Execution of the Unlawful Seizure**

244) On July 10, 2018, based on MPD's threats and without legal alternatives, Plaintiff surrendered KRT to MPD only to protect her from trauma of witnessing her father's arrest.

245) MPD removed the child and transferred custody to the biological mother despite knowing the mother had not been the custodial parent, had not been active in KRT's life, and had no legal entitlement to immediate custody.

246)MPD's actions directly contravene the constitutional safeguards requiring a warrant or exigent circumstances, as established in Heck, Brokaw, and Hernandez.

**D. Subsequent Judicial Reversal Demonstrating Lack of Legal Basis**

247) Within 30 days, both Will County and Cook County Circuit Court judges issued orders requiring KRT's immediate return to Plaintiff, confirming that MPD's removal lacked any lawful basis. *Exhibit 5.*

248) After judicial review, Plaintiff regained custody, where KRT has remained continuously further demonstrating the seizure was unconstitutional and unsupported by probable cause or exigency.

**E. Emotional Harm and Trauma to the Child**

249) MPD's unlawful seizure caused KRT severe emotional distress, depression, confusion, fear, and prolonged trauma that required over two years to recover from.

250) KRT suffered the sudden loss of her father, home, school, friends, pet and family routine without justification.

**F. Outrageous and Vindictive Conduct by MPD**

251) At the time of the seizure, MPD officers were aware Plaintiff had previously filed a federal civil rights lawsuit against MPD in 2012 and seized upon this opportunity to retaliate and harm Plaintiff under the guise of a custody dispute.

252) MPD's conduct seizing a child without legal authority, threatening arrest, bypassing judicial process, and failing to investigate—constitutes extreme and outrageous conduct under federal and state standards.

**G. Consequences of Constitutional Violations**

253) Defendants' actions violated Plaintiffs' Fourth Amendment rights by:

A. Executing a warrantless, non-exigent seizure;

B. Failing to reasonably investigate before removing the child;

C. Coercing surrender through threats of arrest;

D. Removing a child absent legal authority;

E. Performing an unlawful seizure that state courts quickly reversed.

**H. Damages**

254) As a direct and proximate result, Plaintiffs suffered:

A. Severe emotional distress

B. Loss of companionship and parental rights for 30 days

C. Emotional trauma to KRT

D. Legal fees

E. Ongoing psycological impact

F. Constitutional harm compensable under § 1983

255) As a result, Defendants "MPD" failed in their duty as government officials to investigate the veracity of the information they received, and a higher degree of probable cause would be required. The traditional probable cause formulation of *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

WHEREFORE, for the above reasons, Plaintiffs request that this Court enter judgment in their favor and against defendants "VOM" and "MPD" in an amount to be proved at trial, including for general compensatory, special, consequential damages, for emotional distress and privacy violations, attorneys' fees and for all such other relief to which they are entitled and the Court deems just and proper.

**Count VII**

42 USC § 1983 PROCEDURAL DUE PROCESS CLAIM

(Thompson, KRT against VOM, MPD)

256)Plaintiffs re-allege all of the preceding paragraphs and incorporate them in this count.

257) The Village of Monee, "**VOM"** abbreviated below in Count VII, means (The Village of Monee an Illinois Municipal Corporation, Mayor Therese M. Bogs, Wayne Hasser, Romulua Biris, Ruben Bautista, Lance Becvar, Michael Koss, Roxanne Williams), The Monee Police Department, "**MPD"** abbreviated below in Count VII means; Chief Scott Koerner, Anthony Lazzaroni Deputy Chief #703, Jamal Martin #707, Evie Lazzaroni #714, William Little #728, "**NEIGHBORS"** abbreviated below in Count VII means Erwin Boggs. Roberta Boggs, David Lynch, Judith Lynch,

258) To state a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) the deprivation of a constitutionally protected liberty or property interest; (2) that the deprivation occurred without due process of law; and (3) the deprivation was caused by persons acting under color of state law. *Mann v. Vogel*, 707 F.3d 872, 877–78 (7th Cir. 2013); *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008).

259) In the Seventh Circuit, the removal or seizure of a child from a parent's custody without a court order or exigent circumstances constitutes a violation of the Fourteenth Amendment's guarantee of procedural due process. *Heck 327 F.3d at 524–25; Brokaw at 1019–21.* Officials may not remove a child from parental custody unless they have: (a) a court order; or (b) evidence establishing an immediate, reasonable belief that the child is in imminent danger. *Heck*, 327 F.3d at 524. Unsupported allegations, policy disagreements, or a parent's interpersonal conflict do not satisfy constitutional standards. *Id.*

260) When state actors fabricate evidence, falsify police reports, interfere with legal proceedings, or otherwise manipulate processes to justify governmental intrusion, such behavior independently constitutes a procedural due process violation. *Whitlock v. Brueggemann*, 682 F.3d 567, 579–80 (7th Cir. 2012); *Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014).

261) State officials also violate due process when their conduct is so arbitrary, abusive, and oppressive that it shocks the conscience, including malicious or retaliatory misuse of police power. *Brokaw*, 235 F.3d at 1022 (removal of a child based on false allegations and personal animus violates substantive and procedural due process).

**A. Interference with Constitutionally Protected Interest**

262) Plaintiffs possess well-established liberty interests in the care, custody, and management of the minor child, KRT, an interest explicitly protected by the Due Process Clause. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Brokaw*, 235 F.3d at 1019.

263) KRT lived exclusively with Plaintiff since age two, attended Monee Elementary for four consecutive years, and was safely cared for by Plaintiff in a stable home environment. No police reports, teacher notifications, witness statements, or DCFS investigations ever suggested abuse, neglect, or danger.

**B. Removal of KRT Without Court Order, Probable Cause, or Exigent Circumstances**

264) A dispute arose between Plaintiff and KRT's biological mother regarding financial matters unrelated to child safety. The mother approached MPD demanding that officers remove KRT from Plaintiff's custody and from her established school district.

265) Despite having no court order, MPD threatened Plaintiff's attorney:

"*We will arrest Ken if he does not turn over the child.*" -

266) MPD removed KRT from Plaintiff without any of the constitutionally required safeguards, including:

A. No judicial authorization

B. No DCFS investigation

C. No allegation of abuse or neglect;

D. No evidence of imminent harm;

E. No probable cause supporting a custodial seizure under *Gates*, 462 U.S. at 238

267) On July 10, 2018, acting under duress and threat of arrest, Plaintiff surrendered his daughter to MPD solely to prevent further trauma to KRT.

268) MPD handed KRT over to her mother, disrupting the child's education, home stability, emotional wellbeing, and parental relationship all without legal justification.

269) Thirty days later, on August 20, 2018, two separate circuit courts Will County and Cook County issued judicial orders directing the immediate return of KRT to Plaintiff, confirming MPD's seizure was unlawful. Plaintiff has maintained uninterrupted court-ordered custody since then.

270) The courts' rapid reversal of MPD's actions demonstrates the total absence of legal basis for the seizure and the arbitrary abuse of police authority.

**C. Severe Emotional Harm to Plaintiff and KRT**

271) As a direct result of MPD's unconstitutional actions, KRT experienced emotional trauma, depression, anxiety, and distress that persisted for over two years, including the sudden cessation of daily contact with her father and family pets.

272) Plaintiff also suffered significant emotional distress, fear, humiliation, and disruption of parental rights, including witnessing his daughter forcibly taken without cause.

**D. Pattern of Procedural Misconduct Demonstrating Arbitrary and Outrageous Abuse of Power**

273) MPD's unlawful seizure of KRT was consistent with a longstanding pattern of arbitrary, retaliatory, and abusive conduct, including but not limited to:

A. Repeated trespasses on the plaintiff's properties accompanied by threats, insults, fabricated complaints, and harassment.

B. Excessive, baseless code violations, warnings, and fines.

C. Continuous police surveillance and intimidation through frequent drive-bys.

D. MPD shining spotlights on Plaintiff's residence at 1:00 AM as a form of harassment.

E. Fabricated police reports and tampering with evidence including removal of dispatch audio from Officer Drumm's trial CD to conceal contradictions between his statements and the actual arrest video.

274) Conduct of this nature is so extreme that it "shocks the conscience," satisfying procedural and substantive due process standards for constitutional violation. See Lewis, 523 U.S. at 845–47.

**E. Causation and Damages**

275) As a direct and proximate result of Defendants' unconstitutional actions, Plaintiffs suffered deprivation of parental rights, loss of liberty, emotional trauma, humiliation, financial damages, litigation costs, and continuing fear of retaliatory state action.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court enter judgment in their favor and against ALL Defendants in an amount to be proved at trial, including for general compensatory, special, consequential damages, for emotional distress and privacy violations, if applicable attorneys' fees under 42 U.S.C. § 1988, and for all such other relief to which they are entitled and the Court deems just and proper.

## STATE COUNTS

### Count VIII:
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM (IIED)
("Thompson, KRT" against VOM, MPD, and neighbors)

276) Plaintiffs re-allege all of the preceding paragraphs and incorporate them in this count.

277) The Village of Monee, "**VOM"** abbreviated below in Count VIII, means (The Village of Monee an Illinois Municipal Corporation, Mayor Therese M. Bogs, Wayne Hasser, Romulus Biris, Ruben Bautista, Lance Becvar, Michael Koss, Roxanne Williams), The Monee Police Department, "**MPD"** abbreviated below in Count VI means; Chief Scott Koerner, Anthony Lazzaroni Deputy Chief #703, Jamal Martin #707, Evie Lazzaroni #714, William Little # 728, "**NEIGHBORS"** abbreviated below in Count VIII means Erwin Boggs. Roberta Boggs, David Lynch, Judith Lynch.

278) To state a claim for Intentional Infliction of Emotional Distress ("IIED") under Illinois law, a plaintiff must allege: (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant intended to cause emotional distress or knew there was a high probability that their conduct would cause such distress; and (3) the conduct in fact caused severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Conduct is extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," such that it is "regarded as intolerable in a civilized community." *Public Finance Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976).

279) Illinois courts recognize that abuse of governmental authority, racially motivated harassment, misuse of police power, and a sustained campaign of intimidation strongly support a finding of extreme and outrageous conduct. *Honaker v. Smith*, 256 F.3d 477, 490–91 (7th Cir. 2001) (governmental retaliation and harassment can satisfy IIED standard); *Parker v. Side By Side*, *Inc.,* 50 F. Supp. 3d 988, 1023 (N.D. Ill. 2014) (conduct is outrageous when a reasonable person would be compelled to feelings of resentment and outrage).

280) A defendant acts intentionally or recklessly when they know their conduct is likely to cause severe emotional distress or when such harm is a highly probable consequence of their actions. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83–84 (Ill. 2003) (pattern of harassment over time supports IIED).

281) Illinois law also permits an IIED claim when distress is inflicted on a child through the mistreatment of a parent, or where the defendants' actions cause a child emotional trauma. *Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill. 1994).

**A. Extreme and Outrageous Conduct**

282) For more than twenty (20) years, Defendants VOM, MPD, and Neighbors engaged in a coordinated, continuous, malicious campaign of racial harassment, intimidation, selective enforcement, and abuse of governmental authority against Plaintiff Thompson and his family. This conduct far exceeded all possible bounds of decency and would cause any reasonable person to experience severe emotional distress.

283) Defendants repeatedly targeted Plaintiff with as many as 140 written warnings, citations, and fines, including issuing sequential tickets totaling over $5,856 in one day, despite

identical or worse conditions at dozens of neighboring properties. This selective enforcement was deliberate, hostile, and grounded in racial animus.

284) Defendants engaged in near-daily surveillance of Plaintiff's home, patrolling the cul-de-sac, stopping in front of Plaintiff's driveway, shining police lights into his windows at night, and appearing minutes after Plaintiff stepped outside—conduct that no other resident in the Village of Monee experienced.

285) MPD and VOM employees repeatedly trespassed on Plaintiff's properties without lawful purpose, making threats, demands, and accusations about interior home repairs, painting, landscaping, fire pits, garbage cans, parked cars, and maintenance activities. No other residents were subjected to similar intrusions.

286) Several MPD officers acknowledged to Plaintiff that they were instructed to respond daily to "anonymous calls" about his home, and that the source of complaints was known to be his neighbors Defendants Erwin Bogs, Roberta Bogs, and Judith & David Lynch. Officer Drumm told Plaintiff: "We get daily calls on your house, but I know what it is," followed by a gesture indicating race.

287) Defendants fabricated or manipulated official police documentation, including:

A. Omitting complaining-witness names, which were later discovered to be Village employees (government actors).

B. Removing audio from a trial CD in which Officer Drumm made statements contradicting video evidence regarding Plaintiff's arrest.

C. Filing false, absurd, or retaliatory reports at the urging of Neighbor Defendants.

288) Defendants' conduct escalated beyond harassment to criminal-level threats, including the mysterious burning of Plaintiff's son's vehicle, which occurred during an intensified period of neighbor hostility and selective enforcement.

**B. Unlawful Seizure of a Minor Child**

289) In July 2018, MPD—without any court order, DCFS involvement, exigent circumstances, allegations of abuse, probable cause, or any lawful basis seized Plaintiff's minor daughter, KRT, from her longtime school district and delivered her to a noncustodial parent.

290) Prior to the seizure, MPD told Plaintiff's attorney:

*"We will arrest Ken if he does not turn over the child."*

This threat was retaliatory, coercive, and wholly unsupported by law.

291) MPD knew KRT had attended Monee Elementary for four years, lived stably with Plaintiff, and had no history of harm, abuse, neglect, or danger. The removal was motivated by animus toward Plaintiff stemming from his earlier civil rights lawsuit against MPD.

292) KRT was deprived of her home, father, puppy, routine, school, friends, and emotional stability for 30 days, during which she became depressed, anxious, withdrawn, and traumatized.

293) Two separate judges one in Will County and one in Cook County returned KRT to Plaintiff within 30 days, finding no lawful or factual basis for MPD's removal. Six months later, Plaintiff was granted permanent custody of KRT.

294) MPD's conduct constitutes one of the most severe forms of emotional abuse recognized by courts: the needless and unlawful separation of a child from her custodial parent.

Illinois and Seventh Circuit precedent hold that misuse of state power to interfere with parent-child relationships can satisfy even the strictest IIED standards.

**C. Defendants' Intent and Reckless Disregard**

295) Defendants intended to cause emotional distress to Plaintiffs or acted in reckless disregard of the near certainty that their coordinated actions including harassment, stalking, selective enforcement, threats, unlawful seizure of a child, and racialized hostility would cause severe emotional harm.

296) The campaign against Plaintiff was deliberate, repeated, retaliatory, and openly acknowledged by Defendants through statements such as:

> *"You know your neighbors don't like you why don't you move."*
>
> and
>
> *"We will force Kenny to move by any means necessary."*

297) Defendants' actions were not isolated errors, but a systemic effort designed to intimidate, degrade, and emotionally break down Plaintiff and his children, motivated by racial animus and abuse of governmental authority.

**D. Severe Emotional Distress**

298) As a direct and proximate result of Defendants' conduct, Plaintiff Thompson suffered severe emotional distress, including but not limited to sleep disruption, anxiety, humiliation, fear of arrest, hyper-vigilance, loss of autonomy in his home, fear of police retaliation, reputational harm, and financial strain from defending against baseless enforcement actions.

299) As a direct and proximate result of Defendants' actions, KRT suffered severe emotional trauma, including depression, withdrawal, fear of police, anxiety about losing her father again, and long-term psychological harm stemming from her unlawful seizure by MPD.

300) The stress inflicted by Defendants substantially interfered with Plaintiffs' ability to enjoy their home, host family gatherings, or engage in normal social activity without fear of retaliation or racial targeting.

301) Defendants' outrageous conduct was a substantial factor in causing Plaintiffs' emotional injuries, and the emotional distress suffered was severe, lasting, and objectively verifiable.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court enter judgment in their favor and against ALL Defendants in an amount to be proved at trial, including for general compensatory, special, consequential damages, for emotional distress and privacy violations, if applicable attorneys' fees under 42 U.S.C. § 1988, and for all such other relief to which they are entitled and the Court deems just and proper.

COUNT IX – Indemnification
(Against VOM)

302) Plaintiffs re-allege all of the preceding paragraphs and incorporate them in this count.

303)The Village of Monee, "**VOM**" abbreviated below in Count IX, means (The Village of Monee an Illinois Municipal Corporation, Mayor Jay Farquhar, Mayor Therese M. Bogs, Wayne Hasser, Romulua Biris, Ruben Bautista, Lance Becvar, Michael Koss, Roxanne

Williams), The Monee Police Department, "**MPD"** abbreviated below in Count VI means; Chief Scott Koerner, Anthony Lazzaroni Deputy Chief #703, Jamal Martin #707, Evie Lazzaroni #714, William Little # 728, "**NEIGHBORS"** abbreviated below in Count IX means Erwin Boggs. Roberta Boggs, David Lynch, Judith Lynch, Anthony T Chapell.

304) Under Illinois law, a municipality must indemnify its employees for any judgment entered against them for acts committed within the scope of their employment. See 745 ILCS 10/9-102 ("A local public entity is empowered and directed to pay any tort judgment for compensatory damages… for which it or an employee while acting within the scope of his employment is liable.").

305) Federal courts in the Seventh Circuit consistently recognize that § 9-102 creates a direct cause of action against a municipality for indemnification following civil rights violations. *Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997) ("Section 9-102 authorizes a cause of action against a municipality to indemnify an employee for a judgment entered against him based on acts committed within the scope of employment."); *Yang v. City of Chicago*, 137 F.3d 522, 526 (7th Cir. 1998).

306) A municipality may be held responsible even if the employee's conduct was unconstitutional, malicious, or intentional, so long as the conduct arose under color of law or within apparent authority. *Carver v. Sheriff of LaSalle Cnty.*, 324 F.3d 947, 948 (7th Cir. 2003) (municipalities are necessary parties in § 1983 cases for indemnification purposes).

307) Because all individual Defendants acted under color of law, and because VOM officials including the Mayor, former Clerk, code enforcement, and MPD officers—committed

torts while performing their governmental roles, VOM has a statutory duty to indemnify under 745 ILCS 10/9-102.

## COMMON PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant the following relief:

308) Conduct a mediated settlement conference or refer the case to its court-annexed mediation program to assist the parties to bring about a settlement of this case;

A. Conduct a mediated settlement conference or refer the case to its court-annexed mediation program to assist the parties to bring about a settlement of this case;

B. Audit the Village of Monee Code Enforcement ticketing policies, housing code, and municipal court for its treatment of senior citizens and private nuisances;

C. Audit the Village of Monee Police Department's parking ticket policies;

D. Award Plaintiffs actual and compensatory damages to the extent permissible by law to compensate the Plaintiffs for injuries and losses caused by Defendants' conduct;

E. Award Plaintiffs prejudgment interest;

F. Award Plaintiffs reasonable attorneys' fees and costs if applicable; and

G. All other relief as the interests of justice require.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court enter judgment in their favor and against Defendant VMP in an amount to be proved at trial, including for punitive damages, general compensatory, special, consequential damages, for emotional distress and privacy violations, if applicable attorneys' fees under 42 U.S.C. § 1988, and for all such other relief to which they are entitled and the Court deems just and proper.

**JURY DEMAND**

309) Plaintiffs hereby demand a jury trial on all issues so triable.

BY:

/s/ Keenan Thompson (72458) December 8, 2025

Keenan Thompson
1440 W Taylor St. PMB 4046
Chicago, IL 60607
PH: 312-741-8722
ktthompson@thompsongroup.legal